122    APPELLATE COURTS OF ILLINOIS.

Jeneary v. Chicago & Interurban Traction Co., 225 Ill. App. 122.

## William Jeneary, Appellee, v. Chicago & Interurban Traction Company, Appellant.

### Gen. No. 7,011.

1.  STREET RAILROADS—*statute requiring stops at railroad crossings inapplicable to street railroads.* Cahill's Ill. St. ch. 114, ¶ 91, requiring trains approaching crossings of another railroad to stop within 800 feet of such crossing, to see if the way is clear, obviously applies only to railroads, and not to street railroads, and the act does not apply to a crossing of a street car company with that of a railroad company.

2.  STREET RAILROADS—*use of tracks by interurban road as affecting duty of street railroad to stop at crossing.* The granting of permission by a street car company to an interurban company to use its tracks does not make the street car company a railroad company within the meaning of Cahill's Ill. St. ch. 114, ¶ 91, imposing the duty upon railroads to stop within 800 feet of the crossing with another railroad.

3.  STREET RAILROADS—*failure of foreman of railroad switching crew to stop train at street railroad crossing not contributory negligence.* A foreman of a switching crew is not guilty of contributory negligence because of the fact that his train is not brought to a stop within 800 feet of a crossing with the tracks of a street railway company, whereby an interurban train collides with such train injuring the foreman, when it appears that the interurban train was being operated upon the tracks of a street car company not organized under the Railroad Act (Cahill's Ill. St. ch. 114), so that such interurban train was not subject to the duties imposed by the Railroad Act, particularly the duty as to stopping at crossings, imposed by paragraph 91.

4.  STREET RAILROADS—*applicability to interurban railroad of ordinance regulating speed of trains.* A village ordinance prohibiting the operation of "any passenger train of cars" at a greater speed than 10 miles per hour must be construed to prohibit the operation of a single interurban car at a speed in excess of that specified, under the well-recognized rule that words used in the plural include the singular, and also because a contrary construction would do violence to the apparent object and purpose of the ordinance.

5.  COMMERCE—*employee switching cars as engaged in interstate commerce.* A foreman of a switching crew, injured at a crossing when an interurban car collided with a coal car being moved by the switching crew, is engaged in interstate commerce, when it

appears that the foreman's employer had a standing order to send the switching crew daily to a certain village where the collision occurred, and when the train being switched included two cars which were intended to be and subsequently were loaded with machinery and articles billed and destined to various points in the United States outside of the State of Illinois, and in such case it cannot be contended that the foreman was not engaged in such commerce because he was injured on the outgoing trip, or that the two trips were separate and independent.

6. MASTER AND SERVANT—*service to which Federal Employers' Liability Act applies.* A railroad employee plaintiff brings himself within the Federal Employers' Liability Act when his injury is received while he is actually engaged in interstate commerce or in work so closely related thereto as to be practically a part of it.

7. COMMERCE—*instruction as to interstate character as harmless.* The giving of an instruction that a foreman of a switching crew was engaged in interstate commerce, if at the time of a collision at a crossing he was engaged in taking two empty cars to a factory where they were to be loaded with merchandise to be carried out of the state, cannot be said to have injured a defendant interurban railroad whose car collided with the train of the switching crew, when the trip of the switching crew with the empty cars and to bring back loaded cars was a single task, and the foreman was engaged in interstate commerce regardless of the purpose for which the empty cars were sent out.

8. DAMAGES—*when verdict is not excessive.* A verdict of $3,250 awarded to the foreman of a switching crew for injuries received in a collision at a crossing cannot be held excessive when the injuries were severe, serious and permanent, and of a character necessarily diminishing his efficiency.

9. STREET RAILROADS—*facts showing injury at interurban crossing wilfully inflicted.* A finding of wilful misconduct on the part of a motorman of an interurban car which collided with a train at a crossing is warranted where the crossing was one at which the motorman might expect trains to pass, when the view of the crossing was obstructed by buildings, and when the motorman ran the car on a damp day on slippery tracks at a high rate of speed, prohibited by a village ordinance, so that he was unable to stop the car.

10. STREET RAILROADS—*wilful negligence in operation of interurban car at railroad crossing as question of fact.* A question of fact as to whether injuries to a foreman of a switching crew were wilfully inflicted arises where it appears that an interurban car, operated at a prohibited speed, collided at a crossing with a train operated by a switching crew, when the crossing was obstructed

by buildings, and when damp and slippery tracks prevented the motorman from stopping the car.

11. TRIAL—*impropriety of communication by juror with interested person.* As a general rule, conversations between jurors and those engaged in the trial of a cause are improper.

Appeal from the Circuit Court of Kankakee county; the Hon. ARTHUR W. DE SELM, Judge, presiding. Heard in this court at the October term, 1921. Affirmed. Opinion filed April 27, 1922.

W. R. HUNTER and W. H. DYER, for appellant.

MILLER & STREETER, for appellee.

MR. JUSTICE JONES delivered the opinion of the court.

This is an appeal from the circuit court of Kankakee county from a judgment in favor of William Jeneary, appellee, against the Chicago & Interurban Traction Company, appellant, for $3,250 and costs. The declaration contained three counts. The first count charged that the New York Central Railroad Company operated a switch from Kankakee, Illinois, to Bradley, Illinois; that the tracks of said switch extended upon and along South street in the said Village of Bradley; that the North Kankakee Electric Light and Railway Company was possessed of and operated a street car line upon Schuyler avenue in said Village of Bradley and that its said tracks crossed the tracks of the Illinois Central Railroad Company on the same level at said South street; that the appellant traction company on the 23d day of June, 1919, was operating its interurban cars over said street railway track and over and across said switch track of the said New York Central Railroad at said South street; that appellee was in the employ of the New York Central Railroad Company as a switchman and was engaged in interstate commerce at the time of receiving his injuries; that while he was in a coal car of the New York Central Railroad

Company at the said crossing a car of the appellant traction company collided with the car in which he was then riding and caused the injuries complained of. General negligence is averred in this count. The second count pleads an ordinance of the Village of Bradley making unlawful the speed of passenger trains at a greater rate than 10 miles per hour within the village limits and charges that the interurban car was being run in excess of that speed. The third count charges wilfulness.

The David Bradley Manufacturing Works are located at Bradley about one and one-half miles north of Kankakee. South street, along which the Illinois Central Railroad tracks extend, runs east and west. Schuyler avenue, along which the North Kankakee Electric Light & Railway Company's street car tracks extend, runs north and south. The appellant traction company on the date of the accident in question was operating its interurban cars upon the street car tracks. The Illinois Central Railroad Company and the traction company are organized under the General Railroad Act of this State. The street car company is organized under the General Incorporation Act.

On the date above mentioned the appellee, Jeneary, was the foreman of a switching crew composed of the enginemen and three switchmen including himself. They were directed to proceed from Kankakee to Bradley with three cars to be spotted at the David Bradley Manufacturing Works and to bring back two cars which were there loaded and ready to be entrained for their destination. The train going to Bradley consisted of an empty coal car, two box cars and an engine. The train was proceeding west. The coal car was in front, the engine in the rear, headed west. The box cars were to be loaded at the Bradley Works with interstate shipments. The cars which were to be picked up at Bradley and brought back to Kankakee were already loaded with machinery and articles

destined to various places outside of Illinois. The plaintiff was riding in the coal car. The train was proceeding at a slow rate of speed, about 4 miles an hour. On the east side of Schuyler avenue north of its intersection with South street there are buildings, one of which is located at the corner of said intersection and about 63 feet from the center of the street car tracks. Appellee was not in a position to see the interurban car approaching from the north until he had gotten to a place west of the west line of said building. When he arrived at a place where his view was not obstructed, he discovered the approaching interurban car which was running at a speed estimated by various witnesses at from 20 to 40 miles per hour. The tracks were damp and because of the rate of speed at which the interurban car was being operated the motorman was unable to stop it at its usual stopping place, and as a result thereof it crashed into the coal car at the said crossing knocking the car from its trucks and turning it over, causing the appellee to receive serious injuries.

The train on which appellee was riding did not stop within 800 feet from the said railroad crossing and it is urged by appellant that appellee was guilty of contributory negligence and therefore cannot recover in this case. Paragraph 91, chapter 114, of Cahill's Illinois Revised Statutes, 1921, requires all trains running on any railroad in this State, when approaching a crossing with another railroad upon the same level, to be brought to a full stop before reaching the same, and within 800 feet therefrom, and the engineer or other person in charge of the engine attached to the train to positively ascertain that the way is clear and that the train can safely resume its course before proceeding to pass such crossing. Obviously, this statute is intended to apply only to railroads and does not apply to street railways, neither does it apply to a crossing of a railroad company and a street car com-

pany.  Appellant insists upon a different interpretation of the statute and cites *Roy v. East St. Louis & Suburban Ry. Co.*, 119 Ill. App. 313.  Reference to that case will show the grounds upon which the plaintiff was defeated were that both the railroad company and the interurban company were incorporated under the General Railroad Act and were, therefore, subject to all of the statutory regulations concerning railroads and it was the duty of the plaintiff's intestate to stop his train seasonably before reaching the crossing.  His failure to do so was held to make him guilty of contributory negligence.  So, in the instant case, if the appellant company was operating upon its own tracks it would have been the duty of the New York Central Railroad Company to have stopped its train before reaching the crossing in question.  But appellant was not operating its cars upon its own tracks but upon the tracks of a street car company which was not organized under the Railroad Act and was not subject to the duties imposed upon railroad companies nor was it entitled to have railroad trains stop before crossing the street car tracks.  The granting of permission by a street car company to an interurban company to use its tracks does not make the street car company a railroad company within the meaning of the law, nor does it change the duty of a railroad company with respect to crossing over the tracks of the street car company. Hence it was not the duty of the engineer on the New York Central Railroad train nor of the appellee who was in charge of the switching crew to stop the train before reaching said crossing.  The appellee was not guilty of contributory negligence.

On the trial of this case appellee offered in evidence an ordinance of the Village of Bradley which provides that: ''No railroad company, conductor or engineer or other employee of such company shall run or permit to be run within the limits of said village any passenger train of cars at a greater rate of speed than ten

(10) miles per hour.'' Complaint is made by appellant against the admission of this ordinance because as it claims the ordinance was not directed against street cars and interurban cars and included only within its purview railroad passenger trains. It is insisted that a single interurban car is not a passenger train of cars, and *Lake Shore & M. S. R. Co. v. Probeck,* 33 Ill. App. 145, is cited in approval of appellant's position. The ordinance in question in that case limited the speed of passenger trains and the court held that an engine by itself is not a passenger train. Ordinances of this kind ordinarily make a distinction between rates of speed of passenger trains and freight trains. An unattached engine might be declared to be a car, but manifestly it cannot be declared to be a passenger train or a freight train.

We assume that if two interurban passenger cars were attached and propelled by electricity no one would deny that they constituted a train of passenger cars and would be subject to all legal rules and regulations concerning passenger trains. Now if these two cars were to be detached and each run by its own motorman, can it be fairly argued that because they are no longer held together by a coupling pin they are free from the regulations of the city ordinance concerning speed? To give the ordinance such a construction would do violence to the apparent object and purpose of the village authorities whose object it was to protect the public against excessive speed of companies operating such passenger cars. It is difficult to perceive that there is much less danger to the public from an excessive rate of speed in a single car than there is in a number of cars attached together. It is a well-recognized tenet of statutory and ordinance construction that words used in the plural shall include the singular and in such a case as this an interurban passenger car must be construed to mean a train of

passenger cars and come within the purview of the ordinance.

It is also urged by appellant that the plaintiff was not engaged in interstate commerce at the time of receiving his injuries. The undisputed evidence shows that the railroad company had a standing order from the David Bradley Manufacturing Works to send the switching crew to Bradley daily to bring such cars as might be requested for loading and to take out such cars as had already been loaded for shipment; that on the date of the accident there had been already loaded two cars with machinery and articles billed and destined to various points in the United States outside of the State of Illinois. The two cars other than the coal car which were a part of the train going from Kankakee to Bradley were intended to be used and were used for shipments to Portland, Oregon, and Seattle, Washington.

Appellant presents the view that because appellee was injured on the outgoing trip he was not engaged in interstate commerce; that even though the cars were afterwards loaded with interstate shipments and were intended to be so used, the David Bradley Manufacturing Works could have altered its plans and loaded the cars with goods for intrastate shipments and thus changed the character of the employment of appellee; also that the business of going from Kankakee to Bradley constituted one trip and the return from Bradley to Kankakee constituted another trip, so that both the railroad company and the appellee were engaged in a succession of separate and independent tasks. Numerous authorities are cited by appellee for the purpose of lending support to its position. We think it is a well-settled rule of law in this country that a plaintiff brings himself within the Federal Employers' Liability Act when his injury is received while he is actually engaged in interstate commerce or in work so closely related thereto as to be

practically a part of it. It is impossible to perceive, under the facts shown in this case, how the railroad company or the switching crew could pick up the two cars in Bradley without going after them. They were loaded and ready for shipment and the railroad company had orders to go after them. The crew were engaged in the business of interstate commerce in going after these two cars whether they took with them on the outgoing trip any empty cars or not. The fact that they did take to Bradley empty cars does not alter the situation and under our view it would make little difference whether the empty cars were to be afterwards used in interstate commerce or not. The picking up of the cars at Bradley was an inseparable part of a duty of the railroad company and the train crew in the performance of the task before them. We think the purpose and manner of ordering and using the two empty cars which were taken out to Bradley clearly and definitely fixed their character as being engaged in interstate commerce. It has been held by the Supreme Court of this State in *Chicago Junction Ry. Co. v. Industrial Board of Illinois*, 277 Ill. 512, that if the object of a switching movement is the placing of an empty car in a position to receive a load to be carried out of the State, the car is engaged in moving interstate commerce from the moment the switching movement begins. The two empty cars were taken out to Bradley for the express purpose of loading each of them with materials to be shipped to the States of Washington and Oregon, respectively, and were in fact afterwards so loaded and used in making such interstate shipments. The cases cited by appellant in its brief are easily distinguishable from this case upon the facts and are not controlling in this case.

Instruction No. 3 given upon request of the appellee told the jury that if they believed from the evidence that the plaintiff at the time of his injury was engaged in taking two cars to the David Bradley Manufactur-

Jeneary v. Chicago & Interurban Traction Co., 225 Ill. App. 122.

ing Works which were to be loaded with merchandise to be carried out of the State then the plaintiff was engaged in interstate commerce. Appellant complains of this instruction for reasons heretofore pointed out, but under our view of the facts in the case and the law applicable thereto the instruction was proper inasmuch as interstate commerce was the definite settled purpose of taking the cars to Bradley, and appellee was, therefore, engaged in interstate commerce. But even if the purpose of taking these two cars to Bradley were not so definite as the facts show it to be, still the round trip was but a single task in which the appellee was engaged and, that being so, appellee was engaged in interstate commerce from the moment he left Kankakee for the two cars then at Bradley regardless of the purpose for which the empty cars were being taken out. Therefore, under that view of the case, the instruction could work no injury to appellant.

From what we have already said, instruction No. 21 asked by appellant was properly refused. Instructions Nos. 20 and 22 asked by appellant and refused by the court were based upon the theory that it was the duty of the New York Central Railroad train to stop within 800 feet from the street car crossing under paragraph 91 (formerly 75) of the General Railroad Act [Cahill's Ill. St. ch. 114, ¶ 91]. Since said statutory provision has no application to street car crossings, these instructions were properly refused.

It is urged upon us that the verdict is excessive. We have carefully examined the evidence with respect to plaintiff's injuries and inasmuch as they appear from the evidence to have been severe, serious and permanent, and of a character necessarily diminishing his efficiency, the verdict cannot be held to be excessive.

Whether or not the injuries were wilfully and wantonly inflicted was, under the circumstances, a question

of fact for the jury. Here was a grade crossing over which the motorman of the interurban car might have reasonably expected a New York Central train to pass. The view of an approaching train was obstructed by buildings and yet, according to the testimony of the motorman, he ran his car on a damp day on slippery tracks at such a high rate of speed, prohibited by ordinance, that he was unable to stop his car at the place where he says it was customary and usual for him to stop before going over the crossing and permitted his car to collide with the car in which appellee was riding. He further testified that it was because of the excessive speed at which he was operating the car that the accident occurred. There was abundant proof of the motorman's utter disregard for the rights and safety of others and sufficient to warrant the jury in a finding of wilful misconduct on the part of the motorman.

Error was also assigned because of the alleged improper actions of a juror. There were affidavits and counter-affidavits presented on the subject. If the juror said what the appellant contends he did, his action was undoubtedly improper. A juror should not indulge in familiar conduct with litigants or counsel during the progress of a trial and the same may be said as to the conduct of litigants and counsel. As a general rule conversations between jurors and those engaged in the trial of a cause are improper. No matter what the conversation may relate to, it is apt to arouse suspicion and lessen confidence. However, if the conversation was only such as it represented to be in the affidavits filed by appellee, then it did not show any improper spirit in the juror concerning the decision of the case and was not calculated to injure the appellant. Under the circumstances presented by the affidavits we cannot hold that the trial judge incorrectly decided the questions of fact as submitted by the affidavits. The judgment of the trial court is affirmed.

*Affirmed.*