CLARENCE LOVELESS v. BERBERICH DELIVERY COMPANY, Appellant.—
73 S. W. (2d) 790.

Division Two, July 9, 1934.

*Jones, Hocker, Sullivan & Angert* for appellant.

*N. Murry Edwards* and *Robert A. Harris* for respondent.

COOLEY, C.—This case has been reassigned to the writer at the present term. It is an action for damages for personal injuries grow-

ing out of an automobile collision on State Highway No. 13, in Illinois. The suit was brought in the Circuit Court of the City of St. Louis, where plaintiff had judgment for $10,000 against defendant Berberich, from which the latter appealed. Originally there was another defendant, the Pulitzer Publishing Company, but at the close of plaintiff's evidence plaintiff dismissed as to that defendant. The assignments of error urged on this appeal are predicated upon two instructions given for plaintiff; one relating to the statutory duty of an automobile driver to turn to the right of the center of the road upon meeting another vehicle, the other relating to violation of a statutory speed regulation. No question is raised as to the pleadings or that plaintiff did not make a submissible case.

At the time of the collision, which occurred about 1:30 A. M. July 11, 1927, plaintiff was driving a 1923 model Ford automobile, going west on said Illinois Highway No. 13, and one Feldscher, employee of defendant Berberich, was driving the latter's delivery truck east. His business was delivering newspapers to dealers in a number of towns in that part of Illinois. The highway was paved with an eighteen-foot concrete pavement having a black line running lengthwise through the middle, and was straight at the place where the collision occurred. Plaintiff's evidence tended to show that it was a moonlight night; that his car was equipped with magneto lights which were burning, although dimly; that he first discovered defendant's truck, running without headlights, when it was about two hundred feet from him; the truck was "crowding the black line" when he first saw it and when it was about seventy-five feet from him he noticed it coming over across the black line whereupon he at once "cut his steering wheel" to his right and started to apply his brakes, "and by that (time) I was hit." He testified that he was to the north (his right) of the black line at all times and that at the moment of collision his left wheels were about three feet north of said line; that he was rendered unconscious by the collision and did not regain consciousness until some time later in a hospital. Other witnesses who arrived very soon after the accident testified as to the location of the cars, which had not been moved. Plaintiff's witnesses testified that the Ford, which was practically demolished, was lying on the dirt shoulder of the highway north of the concrete, and that the truck was lying on its right side diagonally across the pavement, its front end toward the northeast and four or five feet north of the middle or black line of the pavement. Defendant's witnesses testified that the front end of the truck was about two or two and a half feet north of said line, and that the Ford was only partially off the pavement on the north side, one end of it being still on the pavement. Feldscher, the driver of the truck, a witness for defendant, testified, that he did not see plaintiff's car; that plaintiff was driving without

lights; that just before the collision, when, as he thought, he must have been within twelve or fifteen feet of plaintiff, the lights of his truck, with which he had been having some trouble, went out and he "pushed in" his clutch and shut off the gas and was coasting to a stop, when he hit plaintiff's car. We quote his testimony as to his position relative to the middle of the pavement:

"Q. Where abouts were you in the road at the time of this accident, with reference to which side of the road? A. Well, at the time my lights went out. I was over to the right side, as far over as I could get.

"Q. At the time of the collision did you note the position of your car? A. Well, I didn't have time to get over, that is, on the wrong side, I know that. I had my steering wheel about straight.

"Q. You had your steering wheel about straight? A. Yes, sir; and I couldn't have gotten over the black line."

█ I. Appellant's first contention is that the court erred in giving plaintiff's Instruction No. 1, reading as follows:

"The court instructs the jury that at the time when and the place where the automobiles mentioned in the evidence came into collision with each other, the law of Illinois imposed upon the driver of a motor vehicle when meeting another vehicle on a public highway, in operating such motor vehicle to seasonably turn the same to the right of the center of the beaten track of said highway so as to pass without interference.

"And if the jury find and believe from the evidence that route No. 13 mentioned in the evidence was at the time and place mentioned, a public highway in the State of Illinois and further find that the defendant Berberich's driver of said automobile truck while driving and operating the same on said highway at the time of and immediately before said automobiles in question came into collision, negligently failed to seasonably turn defendant's automobile truck to the right of the center of the beaten track of said highway so as to pass the automobile in which plaintiff was riding without interference, then such failure, if any, was negligence on the part of the defendant, Berberich's driver; and if the jury find and believe from the evidence that as a direct consequence of such negligence above specified, if any, plaintiff was injured, and at the time plaintiff was in the exercise of ordinary care for his own safety, then you will find for the plaintiff and against the defendant, William Berberich."

The Illinois statute, pleaded and introduced in evidence by plaintiff reads:

"Whenever a person operating a motor vehicle shall meet on a public highway any other person riding or driving a horse or other draft animal, or any other vehicle, the person so operating such motor ve-

hicle or vehicles, or riding or driving a horse or other draft animal, shall each seasonably turn to the right of the center of the beaten track of such highway so as to pass without interference.''

Appellant's contention is that the instruction is erroneous because it assumes that appellant's truck driver was on the north, that is his left, side of the roadway immediately before the collision, and negligently failed to seasonably turn to the right of the center. He argues: ''He could not turn it to the right side of the beaten track unless it was on the left side thereof and this assumes necessarily that he was on the left side. Otherwise, if he was on the right side of the beaten track already, then the instruction required him to turn further to the right even to getting off the highway, if necessary to avoid a collision with the Ford car, even if it was on the wrong side.'' Appellant's contention goes too far. The instruction clearly does not assume that the truck driver failed seasonably to turn to the right but expressly requires the jury to so find. The instruction may be subject to criticism on the ground that technically it may be said to assume that the truck driver was on the left of the center of the roadway before the collision, because otherwise, as appellant argues, he could not have *turned* to the right of the center line. We cannot agree with appellant's further argument that under the instruction the truck driver was required to turn still further to the right even though, prior to the collision, he was on his own side of the road. It only required, in the language of the statute, that he turn to the right *of the center* of the beaten track so as to pass plaintiff's car without interference. It also required the jury to find that plaintiff was at the time in the exercise of ordinary care himself. He was not exercising ordinary care if he was violating the statute by driving on the wrong side of the road. The instruction correctly stated the provisions of the Illinois statute and defined the actionable negligence which the jury was required to find in substantially the language of the statute. The statute uses the word ''turn.'' But we think its clear meaning is simply that when passing a vehicle going in the opposite direction a motor vehicle driver must *be* on his proper side of the road. If already there he obeys the statute without turning. Of course instructions are for the guidance of juries composed of laymen and must be written so as to be clearly understandable by them. However, with this thought in mind, we are of the opinion that the instruction in question could not have been misunderstood by the jury. It clearly means that it was the truck driver's duty to keep to his proper side of the center of the roadway when meeting and passing plaintiff's car. We think no juror could reasonably have understood that the instruction required defendant's driver to *turn* to the right of the center of the roadway if he was already there, or to authorize a verdict for the plaintiff if the latter was himself violating

the law by driving on the wrong side of the road and the defendant's driver was obeying it and driving where the statute referred to in the instruction said. he should drive. While the instruction may be technically erroneous in the respect above pointed out and would be a better instruction if it contained a specific requirement that the jury find that the truck driver was on the left of the center of the road we are satisfied that, considering the instruction as a whole, and in view of the evidence, the jury so understood it and that it was not misleading or prejudicial. We have frequently held that non-prejudicial error is not ground for reversal.

II. Appellant charges error in the giving of plaintiff's Instruction No. 2, reading:

"The court instructs the jury that under the laws of the State of Illinois at the time of the collision of the automobiles in evidence, it was made unlawful for the driver of a motor vehicle used for pulling and carrying freight and having a gross weight of five thousand pounds and less, including the weight of the vehicle and maximum load, and equipped with pneumatic tires, to drive and operate the same on the public highways of the State of Illinois at a rate of speed in excess of twenty-five (25) miles per hour. You are therefore instructed that if you find and believe from the evidence that the defendant's automobile truck mentioned in the evidence was such a motor vehicle as above described and if you further find that at the time and before it collided with plaintiff's automobile it was being driven and run by the defendant, William Berberich's agent, and driver in charge thereof upon a public highway within the state of Illinois at a rate of speed in excess of twenty-five (25) miles per hour, then you are instructed that such running in excess of twenty-five (25) miles per hour, if any, was negligence; and if you find and believe that as a direct consequence of such negligence, if any, plaintiff was injured as mentioned in the evidence, and at the time plaintiff was in the exercise of ordinary care for his own safety, then you will find for the plaintiff and against the defendant, William Berberich."

The Illinois statute, which was pleaded and introduced in evidence by plaintiff, limits the speed of trucks such as described in the instruction, equipped with pneumatic tires or cushion wheels, to twenty-five miles per hour, and further provides that if such trucks are equipped with two or more solid rubber tires the speed shall not exceed twenty miles per hour. The maximum speed, therefore, allowed any truck of the gross weight named is twenty-five miles per hour. Appellant asserts that the instruction was erroneously given because: (a) There was no evidence that the truck was of a gross weight, including maximum load, of 5000 pounds or less and equipped with pneumatic tires; and (b) that it told the jury that if it was operated

in excess of twenty-five miles an hour such operation was negligence, whereas the statute offered in evidence makes it prima facie evidence of negligence to operate such vehicle in excess of *thirty-five* miles per hour.

(b) Disposing first of appellant's second contention, (b), he is mistaken as to the applicable statute. A part of the Illinois statute introduced does make a speed in excess of thirty-five miles per hour prima facie evidence that the operator is running at a rate of speed greater than is reasonable or proper, but that provision applies only to passenger vehicles of a certain class, viz.,—"Those vehicles which are designed and used for the carrying of not more than seven persons." It does not apply to trucks. The only statute of Illinois relative to the speed of trucks that was pleaded or offered in evidence was the one above referred to limiting their speed to twenty-five miles an hour. Violation of a municipal ordinance or statute regulating the speed of trains or of motor vehicles on highways is negligence *per se.* [See Schlereth v. Mo. Pac. Ry. Co., 96 Mo. 509, 515, 10 S. W. 66; Hutchinson v. Mo. Pac. Ry. Co., 161 Mo. 246, 253, 61 S. W. 635; Benzel v. Anishanzlin (Mo. App.), 297 S. W. 180.]

(a) We cannot agree with appellant that there was no evidence that the truck in question was of the character and capacity described in the statute offered in evidence. Defendant Berberich, in a deposition taken and introduced by plaintiff, testified that the truck in question was a "three-quarter ton" delivery truck, with "a wire screen body on a regular newspaper truck," open, that is without a cab, in front. Berberich, though present, did not testify at the trial. Defendant's witness, Cooney, testified on cross-examination that the truck was not a passenger truck but "a truck used for hauling light freight." A photograph of the truck, identified by witness Cooney as being a correct representation, was introduced in evidence. It gives an indication of the size and character of the truck, and shows that it was equipped with pneumatic tires. Feldscher's testimony on cross-examination as to his newspaper route and the papers he delivered showed that the load he actually carried was light. Among other circumstances he testified that "any time we can't get through we are supposed to get a taxicab to take our papers on." Defendant did not offer any evidence as to the weight or capacity of the truck. Whether Berberich, in describing the truck as a three-quarter ton truck, meant that its own weight was 1500 pounds or that such was the load it was designed to carry, we think the facts shown, with reasonable inferences to be deduced therefrom, authorized a finding that its gross weight, including maximum load, did not exceed 5000 pounds. If it weighed only 1500 pounds its load, in order to make the gross weight exceed 5000 pounds, would have to exceed 3500 pounds,—and that is not "light freight." If, as Berberich probably

658

meant, it was designed to carry a load of 1500 pounds, it is hardly likely that it weighed over 3500 pounds. Moreover, as stated above, the photograph, which the jury saw, gives some idea of its size and character. We rule this contention against appellant.

Appellant does not seem to contend that there was not sufficient evidence to support a finding that the truck driver's speed at the time of the collision exceeded twenty-five miles per hour. We think there was, but since such contention is not urged it is needless to discuss that question or to set out the evidence tending so to show.

The judgment of the circuit court is affirmed. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.