MARTHA CONNOLE, Administratrix of the Estate of LOUIS DI CARLO, Appellant, v. EAST ST. LOUIS & SUBURBAN RAILWAY COMPANY, a Corporation.—102 S. W. (2d) 581.

Division Two, March 11, 1937.

*Douglas H. Jones* and *J. R. Vettori* for appellant.

*Lashly, Lashly & Miller* for respondent.

BOHLING, C.—Martha Connole, administratrix of the estate of Louis Di Carlo, deceased, instituted suit against the East St. Louis & Suburban Railway Company, a corporation, for $10,000 damages, for the benefit of the widow and two dependent minor children of said Di Carlo [Smith-Hurd R. S. Ill., 1929, Chap. 70, Secs. 1, 2], arising out of the death of said Di Carlo in a collision at a highway-interurban grade intersection in the State of Illinois between an automobile truck and trailer operated by Di Carlo and a car of said railway. The jury found for defendant. Judgment accordingly and plaintiff appeals.

Plaintiff's petition alleged several grounds of negligence; and plaintiff sought recovery under instructions based on primary negligence charging defendant with (1st) the operation of its interurban car at a dangerous rate of speed; (2nd) failure to give warning signals; and (3rd) failure to exercise ordinary care to slacken the speed or stop said car after deceased was in imminent peril.

Defendant's answer was a general denial and, pleading its theory of the Illinois law, set up the affirmative defense of contributory negligence, and submitted its defense on instructions charging decedent with negligence in failing to look; in failing to listen; in failing to observe the Illinois "stop" law and an instruction on the effect of contributory negligence under the law of Illinois.

Plaintiff's reply denied the charges of contributory negligence, defendant's interpretation of the Illinois law and pleaded plaintiff's interpretation of said law.

The accident happened about 2:40 P. M., October 13, 1931. Louis Di Carlo was operating an automobile truck-trailer, with Leonard Valle as relief operator, in a northerly direction on Cookson road out of Fairmount City, Illinois, intending to proceed to St. Louis over United States Highway 40, an approximately east and west concrete slab at the scene of the collision, when the truck-trailer was struck by an eastbound car of defendant at the grade intersection of Cookson road and defendant's interurban tracks. Di Carlo was seated on the west side of the truck. The truck-trailer was twenty-six feet long and, with the load, weighed 23,800 pounds. The interurban tracks paralleled Highway 40 for a half mile or more west of Cookson road, and the Cookson road-interurban intersection was about five feet south of Highway 40. Approaching said intersection from the south and on the east side of Cookson road, according to defendant's witnesses, there was a

highway "stop" sign five or six feet south of defendant's south rail and a street marker two or three feet north of said "stop" sign, but plaintiff's witness placed the "stop" sign fifteen feet and the street marker six to eight feet south of defendant's track. Defendant's track, approaching the intersection from the west, was on a curve, sweeping around to the right or south.. Immediately west of Cookson road and four or five feet south of the track a fence, trees and shrubbery, paralleled the tracks. The motorman was stationed on the right or south side of the defendant's car, approximately over the south rail. He testified that, on account of the obstructions to the view, he was unable to see the interurban track on Cookson road, until within two hundred feet of the intersection and could not see traffic approaching from the south on Cookson road; that he sounded the crossing whistle—two longs and two shorts—two hundred feet from the intersection; that when he was two hundred feet from the intersection, he saw no automobile; that the first time he saw the truck was when the car was twenty to twenty-five feet from the crossing and the truck, traveling four or five miles an hour, rolled out on the rail in front of him, as if "pulling on down there to stop right in the track and it rolled up to the second rail;" that it moved from one rail to the other, about four feet, while the car moved twenty to twenty-five feet; that the car was traveling twenty-five to thirty miles an hour; that it had been raining and the rails were wet; that immediately, upon seeing the truck, he began to sound the gong, blew two short blasts of the whistle, threw off the power and put the car in emergency; that, although he slackened the speed of the car probably five miles an hour, he was unable to stop and the car struck the truck right at the cab, threw it around off the track and knocked the cab off the truck; that the driver of the truck was killed, and that, under the existing conditions, if traveling twenty miles an hour he could have stopped in seventy-five to eighty-five feet; if twenty-five miles an hour, in eighty-five to one hundred feet, although he admitted testifying in his deposition that he could stop the car in shorter distances, for instance, at twenty miles an hour in sixty to seventy feet.

Leonard Valle was the only eyewitness to the collision offered by plaintiff. He testified that Di Carlo and he expected to return and wanted to identify the "turn off" into Fairmount City; that the occupants of the truck were seated about four and one-half feet from the front of the truck; that, passing the "stop" sign, the truck stopped at the street marker, with the front wheels about four feet from the track, while the witness took the names of the streets on the marker; that there they had a view of the track to the west for about seventy-five feet; that, seeing no traffic, they started and the truck was moving about four or five miles an hour, with its front wheels over the south rail, when he saw the approaching car about two hundred

feet away, traveling about fifty miles an hour; that Di Carlo and witness started to stop the truck, stopping it in about three feet, with its front wheels about up to the second rail; that Di Carlo then put the truck in reverse and the car was then about ninety feet away traveling thirty-five miles an hour, with the motorman sounding the gong; that he had heard no signals prior to that time; that when the car was sixty feet away he heard the wheels squeak and slide on the rails, indicating the application of the brakes; that the car slowed down but struck the truck after Di Carlo had succeeded in moving backward about three feet; and that the right side of the car struck the left-hand front end of the truck.

 The accident occurred in Illinois and the law of Illinois, the *lex loci*, which has been pleaded, governs the substantive rights of the litigants [Newlin v. St. Louis & S. F. Railroad Co., 222 Mo. 375, 391(b), 121 S. W. 125, 130(b); Haton v. Illinois Cent. Railroad Co., 335 Mo. 1186, 1193(1), 76 S. W. (2d) 127, 130(1); Saba v. Illinois Cent. Railroad Co., 337 Mo. 105, 110(1), 85 S. W. (2d) 429, 430(1)]; but the law of Missouri, the *lex fori*, governs the rules of evidence, the burden of proof, the competency of witnesses, the weight of the evidence, and other matters relating to the remedy [Menard v. Goltra, 328 Mo. 368, 380, 40 S. W. (2d) 1053, 1058(7)]. The parties are agreed the humanitarian rule as applied in Missouri does not prevail in Illinois. [West Chicago St. Ry. Co. v. Liederman, 187 Ill. 463, 468, 58 N. E. 367, 368, 52 L. R. A. 655, 79 Am. St. Rep. 226, quoted Cox v. Terminal Railroad Assn. (Mo. App.), 43 S. W. (2d) 571, 575.] Notwithstanding expressions may be found in some of the decisions of the courts of Illinois giving countenance to a rule of law similar to our statement of the humanitarian rule; in Illinois, as applied to adults, "the accepted rule is, that if one exercises the degree of care required of him under the circumstances he is guilty of no negligence, but if he fails to do so he is guilty and cannot recover" [Krieger v. Aurora, E. & C. Railroad Co., 242 Ill. 544, 547, 90 N. E. 266, 268] "unless the conduct of the other party is willful and wanton" [Bushman v. Calumet & S. C. Ry. Co., 214 Ill. App. 435, 439. See, among others, Carson, P. S. & Co. v. Chicago Rys. Co., 309 Ill. 346, 352, 141 N. E. 172, 175(5); Little v. Blue Goose Motor Coach Co., 346 Ill. 266, 272, 178 N. E. 496, 498(7, 8); Chicago, W. & V. C. Co. v. Moran, 210 Ill. 9, 17, 71 N. E. 38, 41 (stating: ". . . the law does not permit a recovery by a plaintiff guilty of contributory negligence, on the ground that the negligence of the defendant was gross. Nothing short of a willful act, or willful or intentional neglect of duty, will authorize a recovery by a plaintiff guilty of negligence contributing to the injury complained of);" Illinois Cent. Railroad Co. v. Oswald, 338 Ill. 270, 170 N. E. 247]. A willful or wanton act is something more than an ordinarily negligent act. Without attempting a precise definition of the terms, mere negligence pre-

sumes carelessness, heedlessness and even recklessness, unaccompanied by any intent or purpose to injure, whereas a willful or wanton act implies a disregard of consequences—that absence of care for life, limb or property which exhibits a conscious indifference to the attendant consequences of the act—or a willingness to inflict injury. [Walldren Exp. Co. v. Krug, 291 Ill. 472, 478, 126 N. E. 97, 99(8); Bernier v. Illinois Cent. Railroad Co., 296 Ill. 464, 470, 129 N. E. 747, 749(4); Brown v. Illinois Ter. Co., 319 Ill. 326, 331, 150 N. E. 242, 244(2, 3); Bremer v. Lake Erie & W. Railroad Co., 318 Ill. 11, 20, 148 N. E. 862, 866(8, 9); Illinois Cent. Railroad Co. v. Leiner, 202 Ill. 624, 629, 67 N. E. 398, 399; Burns v. Chicago & A. Railroad Co., 229 Ill. App. 170, 190.]

I. Plaintiff contends the verdict is not supported by any substantial evidence. With the burden of proving defendant's alleged negligence on plaintiff, and the jury privileged to believe or reject (even though uncontradicted and unimpeached) the testimony in whole or in part, of any witness, the contention presents a vastly different issue from that arising when an appealing defendant contends a verdict in plaintiff's favor is not supported by any substantial evidence, as, *ex necessitate rei*, proof of facts establishing defendant's liability by substantial evidence is a condition precedent to a legal verdict in favor of plaintiff. Accordingly, we have ruled the sufficiency of parol testimony to support a verdict in defendant's favor is not an open question in this court. [Cluck v. Abe, 328 Mo. 81, 84(1-4), 40 S. W. (2d) 558, 559(1-5) and cases cited; Dempsey v. Horton, 337 Mo. 379, 384(2), 84 S. W. (2d) 621, 623(3-4).] In the instant case, through pleadings affirming and denying controverted issues of fact, plaintiff and defendant invoked their constitutional privilege to have the facts (the credibility of witnesses and the weight and value of their testimony) determined by a jury. [Sec. 28, Art. II, Mo. Const.; Sec. 948, R. S. 1929, Mo. Stat. Ann., p. 1219.] However, Trent v. Barber (Mo. App.), 56 S. W. (2d) 151(2), cited by plaintiff, states: ". . . in extreme cases, where there is no substantial evidence to support the verdict, or the verdict is so strongly opposed to reason as to manifest passion or prejudice on the part of the jury, the appellate court will not hesitate to interfere, whether the verdict be for plaintiff or defendant. [Caruth v. Richeson, 96 Mo. 186, 9 S. W. 633; Whitsett v. Ranson, 79 Mo. 258; Yarber v. Connecticut Fire Ins. Co. (Mo. App.), 10 S. W. (2d) 957.]" In the Yarber case the issue was presented by an appealing defendant and involved documentary evidence. The effect of the ruling in the Whitsett and other cases is stated in the Caruth case [96 Mo. 1. c. 192]: "While different language is used in these cases, in the statement of the rule, it is safe to say that this court will, in no case, interfere with the verdict for defendant on the ground that it is against the evidence, *unless it appears to our satisfaction that the verdict was the result of corruption, prejudice or pas-*

*sion.''* (Italics ours.) We so read the authorities; and the statement of the rule in Trent v. Barber, supra, to the extent indicated is too broad. We find nothing in this record suggesting that the jury was actuated by passion or prejudice.

II. Instruction No. 8 read:

"The Court instructs the jury that the interurban railroad tracks mentioned in the evidence at their intersection with Cookson Road constituted a railroad crossing. And the Court instructs the jury that on the occasion mentioned in the evidence there was in full force and effect a statute of the State of Illinois, which provided as follows:

" 'At all grade crossings at which "stop" signs are placed, a person controlling the movement of any self-propelled vehicle shall bring such vehicle to a full stop at such "stop" sign before proceeding over the railroad track.'

"And the Court instructs the jury that if you believe and find from the evidence that on the occasion mentioned in the evidence there was a 'stop' sign placed alongside of said Cookson Road to the south of said railroad crossing some 5-8 feet from said crossing and in plain view of Louis Di Carlo as he drove his automobile truck northwardly toward said crossing, then and in that case the Court instructs the jury that it was the duty of Louis Di Carlo in approaching said railroad crossing and before attempting to cross over same to bring his automobile truck to a full stop at said 'stop' sign. And the Court instructs the jury that if you believe and find from the evidence that Louis Di Carlo on said occasion, when approaching said crossing and said 'stop' sign, did not bring his automobile truck to a full stop at said 'stop' sign and before attempting to cross over said railroad tracks, then and in that case said Louis Di Carlo was guilty of contributory negligence and plaintiff is not entitled to recover herein and you will find your verdict for defendant.''

Defendant pleaded the statute relied on in the instruction. [Sec. 161 of Chap. 121, Smith-Hurd Ill. R. S. 1929. Repealed: Laws of Illinois 1933, p. 957.]

(a) Plaintiff's reply alleged and plaintiff contends the statute applied only to steam railroads. The trial appears to have proceeded on the theory defendant was organized under the General Railroad Act of Illinois and was engaged in the operation of an electric interurban railway. Defendant's car involved in the collision was operating over defendant's track as a common carrier between St. Louis, Missouri, and Collinsville, Illinois, from one municipality to another and not merely from one point to another on the streets of a city. Plaintiff relies on Jeneary v. Chicago & Int. Tr. Co., 225 Ill. App. 122, 128, which held the Illinois statute requiring railroad trains to come to a full stop, etc., before reaching a grade intersection with another railroad applied only to railroads and not to street railroads, and the permissive use of a street railway's track by an interurban railway did

not make the street railway's track at its grade intersection with a railroad a railroad track within the meaning of said statute. Roy v. East St. Louis & Suburban Ry. Co., 119 Ill. App. 313, 316, held a grade intersection of defendant's track with a railroad's track to be within said statute, and that defendant, organized under the General Railroad Act of Illinois, was not to be treated merely as a street railway, although its motive power was electricity and not steam. We think the term "railroad" as used in said Section 161 was used in like sense as the term "railroad" in the statute involved in the cases cited; and said Section 161 applied to commercial railroads organized under the General Railroad Act of Illinois engaged in commerce between different localities whether the motive power be steam, electricity or other agency. [Wilder v. Aurora Tr. Co., 216 Ill. 493, 528, 75 N. E. 194, 206; Chicago & So. Tr. Co. v. Illinois Cent. Railroad Co., 246 Ill.. 146, 158, 92 N. E. 583, 586; Schlauder v. Chicago & So. Tr. Co., 253 Ill. 154, 158, 97 N. E. 233, 235(1).]

■ (b) Plaintiff states it is admitted deceased stopped after he passed the stop sign and before proceeding on to the track. Valle so testified. However, there was testimony for defendant that the truck passed the stop sign and stopped on defendant's track.

(c) Plaintiff contends a failure of deceased to stop was not negligence as a matter of law. Decisions of the Illinois courts, cited by plaintiff, passing on facts occurring prior to 1917, or collisions involving horse-drawn cars or street cars and pedestrians, horse-drawn vehicles or automobiles, or collisions involving railroads and automobiles passing off on an issue of willful or wanton negligence do not raise any issue within the statute pleaded by defendant, which was first enacted in 1917 [Ill. Laws 1917, p. 672] and applied only to self-propelled vehicles approaching a highway-railroad grade intersection at which "stop" signs had been erected. The case of Pokora v. Wabash Ry. Co., 292 U. S. 98, 104, 54 Sup. Ct. 581, 582(6), 78 L. Ed. 1149, 1154, 66 Fed. (2d) 166, stressed by plaintiff, is sufficiently distinguished from the instant case in that no issue involving a crossing at which a "stop" sign existed is discussed. Upon a directed verdict for defendant, the evidence in the Pokora case disclosed that Pokora had stopped, looked and listened; that obstructions to the view and noises interfered with his ability to see and hear; and, in holding Pokora not guilty of contributory negligence as a matter of law, the court considered the jury might find another mere stop after the obstructions had been cleared would not have aided him and a failure to stop and reconnoitre was not "negligence so obvious and certain that one conclusion and one only was permissible for rational and candid minds." In the instant case we are dealing with the violation of a duty imposed by statute designed for the prevention of collisions such as is here involved and not mere negligence on the part of deceased. A failure to stop in violation of said statute has been con-

sidered negligence. [Greenstreet v. Atchison, T. & S. F. Ry. Co., 234 Ill. App. 339, 344; Bushu v. Cordera, 257 Ill. App. 234, 238; and see Illinois Cent. Ry. Co. v. Scheevers, 134 Ill. App. 514, 517, affirmed 235 Ill. 227, 85 N. E. 192; Loveless v. Berberich Delivery Co., 335 Mo. 650, 657(b), 73 S. W. (2d) 790, 793(b); 45 C. J. 720, n. 78, Illinois cases.]

(d) But for such negligence to bar a recovery for actionable negligence of a defendant it must have constituted a contributing proximate cause to plaintiff's injury. The instruction requires no such finding by the jury. Instruction No. 7 informed the jury of the effect of contributory negligence under the law of Illinois, and that if they believed "the collision . . . was directly caused . . . by any negligence" of deceased "in any particular or particulars referred to in other instructions herein, then . . . you will find your verdict for the defendant." Defendant asserts (1) the violation of the statute, if found, constituted a proximate cause of the collision following immediately thereafter and the collision was the natural and probable consequence of such violation; and (2), also, the omission from Instruction No. 8 to find the causal connection was supplied by Instruction No. 7. We consider the issue as presented by the litigants, and in so doing view the statutory requirement to stop subject to a reasonable interpretation, i. e., to stop within a reasonable distance of the sign and as embracing the due exercise of the ocular and auditory faculties to accomplish the purposes of the statute.

(1) The case is close on the issue. Plaintiff presents the testimony in narrative form. The exhibits are not before us. Defendant filed no additional abstract. Valle testified one about eight and a half feet south of the track had a view of the track to the west for about seventy-five feet, and when he was over the south rail, he saw the car approaching two hundred feet away. The motorman testified he could first see the rails on Cookson road when about two hundred feet west of the crossing. The inference from the testimony is that deceased was not familiar with the crossing and that his limit of vision west along the track decreased in proportion as his distance south of the track increased. Seated four and a half feet back of the front of the truck, there is no showing of record of the ability of deceased to have seen defendant's approaching car had the front of the truck stopped six or more feet south of the track. A pedestrian testified the truck was on the track when she heard a crossing signal.. From the motorman's testimony that the truck was rolling onto the track when he first saw it, the position of the truck when he previously sounded the crossing signals is left to speculation. Another motorist, about one hundred and fifty feet north of the track, testified he "heard a whistle which drew his attention," looked up, saw the truck on the track and the car about sixty feet away. Under such showing we are not prepared to say as a matter of law that the negligence of deceased

in failing to stop at the sign directly contributed to the collision; for to indulge in such a conclusion as a matter of law it should clearly appear from the evidence the "stop" sign was so placed that the due observance of the statute would so effectually accomplish its purpose in the given case that reasonable and candid minds would concur in such conclusion. [See, by analogy, the reasoning in Pokora v. Wabash Ry. Co., supra.] Section 161, supra, also prohibits motor vehicles exceeding a speed of ten miles an hour upon approaching a highway-railroad grade intersection. In Crawford v. Chicago & A. Railroad Co., 226 Ill. App. 138, 141 et seq., the motorist's view was obstructed, and the failure of an instruction on contributory negligence to require a finding of the necessary causal connection (the issue before us) between the negligence of the motorist in exceeding said speed limitation and the collision was held reversible error. Bux v. Illinois Cent. Railroad Co., 229 Ill. App. 50, 53, in holding a motorist whose view was obstructed and who stopped about twenty-one feet from a highway-railroad grade intersection when the "stop" sign was about fourteen feet from said intersection not barred from recovery as a matter of law, is to the effect that although the motorist may have been negligent in violating the statute, it must further appear that such negligence was the proximate cause of the injury, usually (and held to be) a jury question, to preclude a recovery. [See, also, Waitrovich v. Black, 254 Ill. App. 49, 52; Bluedorn v. Missouri Pac. Ry. Co., 121 Mo. 258, 268(2), 25 S. W. 943, 946; Stack v. General Baking Co., 283 Mo. 396, 416, 223 S. W. 89, 95(14).]

We think the cases cited by defendant do not rule the issue. Some, clearly, are not in point. In Ashby v. Gravel Road Co., 99 Mo. App. 178, 185, 73 S. W. 229, 231, testimony tending to show that the defective condition of the road was the proximate cause of the injury was adduced, and we do not understand the case to pass on an instruction omitting the requirement of a finding of the necessary causal connection by the jury. In Ward v. Ely-Walker D. G. Bldg. Co., 248 Mo. 348, 361, 154 S. W. 478, 481, the instruction required the jury to find the necessary causal connection. In Greenstreet v. Atchison, T. & S. F. Ry. Co., and Bushu v. Cordera, supra, and other Illinois cases cited by defendant, it clearly appeared that the motorist had an unobstructed view of the approaching train. Gibbons v. Aurora, E. & C. Railroad Co., 263 Ill. 266, 274, and Dukeman v. Cleveland C. C. & St. L. Ry. Co., 237 Ill. 104, 110, 86 N. E. 712, 714, approve instructions making the violation of a municipal speed ordinance by a railroad the presumptive cause of the injury, but rest upon an Illinois statutory enactment expressly to that effect and applicable only against railroads under certain facts. In Robeson v. Greyhound Lines, Inc., 257 Ill. App. 278, 283, an instruction assuming facts conclusively established without contradiction was held not reversible error, the

jury being required to find the willfulness and wantonness of such assumed facts.

(2) Here defendant relies on Deschner v. St. Louis & M. R. Railroad Co., 200 Mo. 310, 332(b), 98 S. W. 737, 743(b), and Cornovski v. St. Louis Transit Co., 207 Mo. 263, 275(2), 106 S. W. 51, 56. These and other like cases hold an instruction which directs a verdict but feebly, obscurely or impliedly requires the jury to find the necessary causal connection between the negligence and the injury may be cleared up by an instruction of the adversary which removes the obscurity and doubt existing under the former instruction. In the instant case defendant's Instruction No. 8 directs a verdict merely upon the finding that deceased did not bring his truck to a full stop at the "stop" sign before proceeding over the railroad track. No hint or implication whatsoever that such negligence should be found a contributing proximate cause of the collision is embodied in the instruction, and when considered with Instruction No. 7, which also directs a verdict, its tendency was to confuse rather than enlighten the jury. True, the instructions are to be read as a whole and omissions of certain essential facts for or to bar recovery in an instruction directing a verdict *may* be cured by other instructions, e. g., matters of defense [State ex rel. v. Cox, 307 Mo. 194, 197, 270 S. W. 113(1)], such as contributory negligence [Heigold v. United Rys. Co., 308 Mo. 142, 157, 271 S. W. 773, 777] omitted from plaintiff's instructions; but where such an instruction omits the requirement of the finding of a contested *affirmative* fact essential to such verdict, the omission may not be cured by other instructions [Hall v. Manufacturers' C. & C. Co., 260 Mo. 351, 369, 168 S. W. 932 (given on behalf of such party); State ex rel. v. Ellison, 272 Mo. 571, 583, 199 S. W. 984, 988; Schubert v. American Press, 323 Mo. 299, 306(2), 19 S. W. (2d) 472, 475(3); Blackwell v. Union Pac. Railroad Co., 331 Mo. 34, 42(4), 52 S. W. (2d) 814, 816(5)], e. g., the necessary causal connection [Dunsmore v. Hartman (Mo.), 256 S. W. 1031, 1034(3), and see Lackey v. United Rys. Co., 288 Mo. 120, 146(4), 231 S. W. 956, 963(1)]. The rules and the reasons therefor may be found in the cases cited.

Upon retrial defendant should conform the wording of the instruction to the statute, if for no other reason, to preclude unnecessary issues.

We have fully considered the many objections to defendant's instructions, each of which directed a verdict, but shall dispose of them without extended discussion.

III. Instructions Nos. 5 (on the duty of deceased to look) and 6 (on the duty of deceased to listen) failed to require the jury to find that the contributory negligence set forth was the proximate cause of the collision, but, unlike Instruction No. 8, hypothesized negligent acts, which if found, as a matter of necessity must have directly contributed to the collision, and are deemed sufficient in this respect.

[Barr. v. Mo. Pac. Rd. Co. (Mo.), 37 S. W. (2d) 927, 930(8); State ex rel. v. Ellison (Mo. Banc), 208 S. W. 443, 444; King v. Wabash Railroad Co., 211 Mo. 1, 13(1), 109 S. W. 671, 673(1).] For instance, Instruction No. 5 required findings that as deceased approached the crossing defendant's car was approaching said crossing and in dangerous proximity thereto; that deceased did not exercise ordinary care to look for said car; that had he exercised such ordinary care to look, he would have seen said car in time, by the exercise of ordinary care, to have avoided the collision, and that he failed to so act.

■ IV. Instructions Nos. 5 and 6, each, after hypothesizing certain facts, state "then and in that case such conduct on the part of" deceased "constituted contributory negligence on his part and plaintiff is not entitled to recover and you will find your verdict for defendant." Plaintiff asserts (a) Instruction No. 5 assumed deceased was guilty of contributory negligence, and (b) Instruction No. 6 was a positive declaration to return a verdict for defendant irrespective of any contributory negligence whatsoever.

An instruction is to be considered as a whole, and individual phrases or clauses are not to be torn from their setting and isolated and considered separate and apart from their context in construing the instruction. When this is done, we think the instructions not subject to the objections urged against them.

(a) The instruction first required the jury to find enumerated facts which constitute negligence in law. Informing the jury such facts constitute negligence is not an assumption of the existence of the premises required to be found from which the conclusion is drawn, and no purpose is served by having a jury confirm such legal conclusion by a finding that such facts constitute negligence in fact. [Oglesby v. St. Louis & S. F. Railroad Co., 318 Mo. 79, 95, 1 S. W. (2d) 172, 179(10), citing cases and stating under such circumstances: " 'The law draws the conclusion in such cases.' " [Dodson v. Gate City Oil Co. (Mo.), 88 S. W. (2d) 866, 873(10); Thompson v. City of Lamar, 322 Mo. 514, 540, 17 S. W. (2d) 960, 971(11); Bagby v. Culbertson (Mo. App.), 273 S. W. 209, 211(2).]

(b) The return of a verdict for defendant was clearly conditioned upon the existence of the facts required to be found in the preceding clauses, phrases and words of the instruction.

■ V. Instruction No. 5 did not place, as argued by plaintiff, an absolute duty on deceased to look (or, for that matter, to see defendant's car) but only required that he exercise ordinary care to look. The gist of the instruction was that a failure to exercise ordinary care in the particulars mentioned constituted negligence. In Illinois, as elsewhere, travelers approaching a highway grade intersection with a railroad must exercise ordinary care for their own safety. Greenwald v. Baltimore & O. Railroad Co., 332 Ill. 627, 631, 164 N. E. 142,

144(1), states: "The rule has long been settled in this State that it is the duty of persons about to cross a railroad track to look about them and see if there is danger, and not to go recklessly upon the track but to take proper precaution to avoid accident. It is generally recognized that railroad crossings are dangerous places, and one crossing the same must approach the track with the amount of care commensurate with the known danger, and when a traveler on a public highway fails to use ordinary precaution while driving over a railroad crossing, the general knowledge and experience of mankind condemns such conduct as negligence.. [Citing cases.]" And 1. c. 633: "The duty resting upon one who crosses a railroad track is not only to listen but to look, and the fact that no bell was rung or whistle blown, if such was the fact, would not excuse him from using due care to look in the direction from which a train might be coming." [Newell v. Cleveland, C. C. & St. L. Ry. Co., 261 Ill. 505, 511, 104 N. E. 223, 225(4); Provenzano v. Illinois Cent. Railroad Co., 357 Ill. 192, 196, 191 N. E. 287, 289(5).] A different issue would have been presented had the instruction proceeded wholly on the theory deceased failed to look.

VI. Plaintiff makes several contentions that instructions Nos. 5 and 6 were broader than defendant's pleading. Instructions should be within the pleadings and the evidence.

Plaintiff argues the answer charged contributory negligence in that deceased "saw *and* heard;" whereas Instruction No. 5 was based only on a failure to look and not a failure to look and listen. It was the duty of deceased to exercise ordinary care to look and to listen; and we interpret the answer to charge deceased with negligence in failing to see the approaching car and with negligence in failing to hear the approaching car, authorizing defendant to submit either or both charges of negligence to the jury, depending, of course, on the evidence. [Meeker v. Union El. L. & P. Co., 279 Mo. 574, 600(1), 216 S. W. 923, 931(1, 2); State ex rel. v. Ellison (Mo.), 223 S. W. 671, 673(3). See, also, Sublett v. Terminal Railroad Assn. (Mo.), 267 S. W. 622, 631(3).]

Any occasion for such an issue arising may be readily eliminated by charging the separate acts of negligence in separate paragraphs or otherwise so as to remove any possibility of interpreting the pleading as relying upon the concurrence of the separate acts for a single ground of negligence. Other like issues presented by plaintiff may be eliminated by amending the answer or by causing the instructions to conform with the allegations thereof and the evidence. We deem it unnecessary to rule the specific assignments.

■ VII. Plaintiff asserts there was no evidence to support the charge (a) that the car was in sight and in dangerous proximity as deceased approached the track, or (b) that any signals were sounded

which should have been heard by deceased in time for him to have avoided the injury. We shall not review the evidence.

(a) We think the jury might have concluded that when the occupants of the truck's cab were eight and one-half feet from the track deceased had a view of the track for seventy-five feet to the west and the truck was stopped on the highway (if they believed that portion of witness Valle's testimony); that defendant's car was traveling about thirty miles an hour; that the truck traveled approximately eight feet; that defendant's car traveled twenty to twenty-five feet while the truck traveled the last four feet, the car slackening its speed about five miles an hour in said distance; and that while the occupants of the cab were eight and one-half feet from the crossing the car was approaching from the west and within sight.

(b) There was testimony that the crossing signals of defendant's car could be heard three-quarters of a mile; and from the testimony of the motorman and conductor, viewed in the light of the testimony of other witnesses, the crossing signals were sounded while deceased and the truck were in the vicinity of the crossing and south of the track, although their position with reference to the "stop" sign remained a matter of speculation. We think it was for the jury to say whether or not deceased could have heard, in the exercise of ordinary care, the crossing signals, if sounded.

■ VIII. After requiring the jury to find from the evidence that crossing signals were sounded on defendant's car, Instruction No. 6 states "and if you further believe and find from the evidence *that at the time said signals were sounded*" etc. Plaintiff asserts the instruction assumed crossing signals were sounded. Without adverting to other possible reasons, the instruction first required the jury to find that crossing signals had been given and, reading the instruction as a whole, the subsequent assumption of the fact previously required to be found in the instruction in connection with a further finding of facts was not such an assumption of the former fact within the law as to constitute error. [Williams v. St. Louis Pub. Serv. Co., 335 Mo. 335, 342(4), 73 S. W. (2d) 199, 201(5); Guthrie v. Albert Wenzlick R. E. Co., 54 S. W. (2d) 801, 805(7).]

■ IX. Instruction No. 7 read:
"The court instructs the jury that the testimony in this case shows that the collision mentioned in the evidence occurred in the state of Illinois. And the court instructs the jury that the law of the state of Illinois in an action for the death of a person based upon alleged negligence is and was at the time of the collision mentioned in the evidence that plaintiff in such action can never recover if such death was directly caused in whole or in part by any contributory negligence on the part of such deceased person. Therefore, the court instructs the jury that if you believe and find from the evidence that the collision

mentioned in the evidence was directly caused in whole or in part by any negligence on the part of Louis Di Carlo in any particular or particulars referred to in other instructions herein, then and in that case plaintiff is not entitled to recover and you will find your verdict for the defendant.''

Plaintiff's case was submitted on defendant's primary negligence only.

(a) Plaintiff claims the instruction is general and abstract. That part of the instruction following the statement of the law of contributory negligence of the State of Illinois restricted the jury's consideration of said instruction to that negligence of deceased set forth in the other instructions. Plaintiff's discussion ignores this restricted application of the instruction to the case. Instruction No. 3 in Watts v. Moussette, 337 Mo. 533, 85 S. W. (2d) 487, 492(8), stressed by plaintiff, made no attempt, as did the instant instruction, to confine the negligence instructed on to that negligence within the pleadings and the evidence.

(b) The last sentence of the instruction refutes plaintiff's claim that no causal connection is required to be found between the negligence of deceased and the injury. [Applebee v. Ross (Mo.), 48 S. W. (2d) 900, 901(4).]

(c) Plaintiff states ''this instruction tells the jury that no recovery may be had if the collision was caused 'in whole or in part by any negligence . . . in any particular;' '' and bars a recovery for slight contributory negligence. Plaintiff's argument ignores pertinent phases of the instruction. We are not unmindful of our cases ruling erroneous instructions to the effect that if plaintiff's negligence ''contributed in the slightest degree'' or ''in any degree'' to his injuries, or the observation, quoted by plaintiff, in Menard v. Goltra, 328 Mo. 368, 381, 40 S. W. (2d) 1053, 1058(10), that: ''Under the Missouri rule an injured plaintiff may recover although negligent unless his negligence had something to do with causing the injury.'' Without analyzing the instruction, we think it may be framed to more aptly and clearly express defendant's theory as referring to that negligence specified in one or more of defendant's separate and distinct instructions setting forth what constituted, under the facts of the case, contributory negligence; and by substituting a more definite article in lieu of or omitting the rather indefinite ''any'' remove all possibility of interpreting the instruction as authorizing a consideration of relative grades or degrees of contributory negligence, or a verdict for defendant for slight negligence, without infringing on the legal rights of defendant involved herein.

X. Plaintiff asserts reversible error in that defendant's instructions unduly repeated the fact that contributory negligence would bar recovery, and refers us to cases announcing the general rule.

Litigants are privileged to submit instructions covering their several properly specified allegations of action or defense when supported by substantial evidence. [St. Louis, K. & N. W. Ry. Co. v. St. Louis U. S. Y. Co., 120 Mo. 541, 556, 25 S. W. 399; Perkins v. Kansas City So. Ry. Co., 329 Mo. 1190, 1203, 49 S. W. (2d) 103, 108(12).]

The judgment is reversed and the cause remanded. *Cooley* and *Westhues*, CC., concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.