JOHN C. HUGHES et al., Appellants, v. WILLIAM WINKLEMAN and FIRST NATIONAL BANK of Boone, Iowa.

**Division One, May 31, 1912.**

1. **MORTGAGE SALE: Redemption: Irregularities: Silence Is Abandonment.** Allegations of such irregularities in the foreclosure sale as rendered it voidable and invoking relief on general equitable principles, passed over in silence and not pressed in plaintiff's brief, will not be considered, for that silence is tantamount to an admission of a failure of proof and to an invitation to the court to put such issues out of view.

2. ————: ————: **After Foreclosure: At Common Law: Under Statute.** At common law, whatever right to redemption existed prior to foreclosure of a mortgage, after foreclosure and sale there was no right to redemption as of course. The right to redeem as of course is purely a creature of statute in several States, and when a State has enacted such a statute it constitutes a rule of property in the State that enacted it, but it has no extra territorial force.

243 Sup.—6

Hughes v. Winkleman.

3. ———: ———: ———: Iowa Contract. The absence of a statutory right of redemption under a decree of foreclosure in court leaves the common law in force in Missouri as to that kind of sale, which is that there is no right to redeem after foreclosure and sale.

4. ———: ———: ———: ———: Right to Redeem Under Iowa Statute. The right of a mortgagor in a mortgage executed in Iowa to an Iowa mortgagee on Missouri land to redemption after foreclosure sale is not determined or affected by an Iowa statute creating the right to redeem within one year after foreclosure sale as of course, but (absent a statute) is determined by the common law in force in Missouri, which is the *lex rei sitae*, and the common law gives no right to redeem after a decree of foreclosure in court and sale. That Iowa statute has no extra-territorial force. It does not affect the right to redeem Missouri land sold upon foreclosure of the mortgage.

5. ———: ———: ———: ———: Comity. Comity is courtesy. In jurisprudence it is a kind of courtesy which, subject to exceptions, is administered by fixed rules of law and rises to the dignity of a legal right. But comity must give way to the law of the forum where the latter as a rule of property in the State of the forum clashes with a rule of property in some other State, when the property is real estate. The title to real property can be acquired, past and lost only according to the *lex rei sitae.* The remedy to enforce the lien of a mortgage (wherever made) is determined by the law of the State in which the land lies.

Appeal from Clark Circuit Court.—*Hon. Charles D. Stewart,* Judge.

AFFIRMED.

*Felix T. Hughes* and *T. L. Montgomery* for appellants.

(1) The contract being a note payable in Iowa and the parties residing there and a mortgage securing the same on land in Missouri, the entire contract, including the right of the parties thereunder, is governed by the laws of Iowa at the time the contracts were made and entered into in said State—the law with which the parties were familiar and by which they are presumed to be governed. Thurston v. Rosenfield, 42 Mo. 474; Ins. Co. v. Simmons, 52 Mo. App. 358; Bent-

ley v. Whittemore, 19 N. J. Eq. 462; Hazelett v. Wood-
ruff, 150 Mo. 543; Bryan v. Bristed, 26 Mo. 423; Clem-
ent v. Schmidt, 17 L. R. A. 1094.  (2) This is not
asking a Missouri court to administer justice according
to the forms and proceedings of the Iowa code but to
give effect to said code in so far as it affects appel-
lant's rights under the contract which brought with
it into this state the *lex loci contractus.*  Tower Co. v.
Hamilton, 179 Mo. 205; Gates v. Tibbetts, 100 Mo. App.
590; Bank v. Cooper, 85 Mo. App. 383; Long v. Long,
141 Mo. 373; Johnson v. Machine Co., 144 Mo. App.
441; Vennum v. Mertens, 119 Mo. App. 461; Dewolf v.
Johnson, 10 Wheat. 367; Trust Co. v. Digest, 89 Fed.
123; Kuhn v. Morrison, 75 Fed. 81; Arnold v. Potter,
22 Iowa, 194; Ins. Co. v. Simmons, 52 Mo. App. 357;
Hazlett v. Woodruff, 150 Mo. 539; Matheny v. Stew-
art, 108 Mo. 78.  (3) The contract brings with it into
this State and has impressed upon it the *lex loci con-
tractus* and the appellants are not seeking a remedy
not provided by the laws of this State, but are asking
the enforcement of a right provided by the laws of
Iowa which this court has declared in cases similar.
Foundry v. Jackson, 128 Mo. 119; Berkley v. Tootle,
163 Mo. 584; Moore v. Lucas, 29 Pa. St. 260; County v.
Mercantile Co., 84 Ky. 344; Thompson v. Ins. Co., 169
Mo. 12; Scudder v. Bank, 91 U. S. 406; Bank v. Cooper,
85 Mo. App. 383.  (4) The force and effect of a deed
made between parties domiciled in Indiana of land in
Missouri, is solved by the laws of Indiana, and the
words "grant, bargain, sell and convey" which by the
laws of Missouri implied a covenant of seizure, but the
laws of Indiana did not so imply.  Bethell v. Bethell,
54 Ind. 428; 1 Wharton on Conflict of Laws (3 Ed.),
sec. 276; Clenn v. Whistle, 23 Miss. 42.  (5) The rule,
that the *lex rei sitae* applies to real estate or real prop-
erty contracts is applicable only so far as pertains to
the form or mode of execution of the deed conveying
the same, and the mortgage in the case at bar being a

security for the note is governed by the place of performance of the contract in Iowa. 1 Wharton on Conflict of Laws (3 Ed.), secs. 276a, 276b, 510k; 1 Pingrey on Mortgages (Ed. 1893), secs. 789, 795, 796, art. 4; Lyon v. McQuevaine, 24 Ia. 9; Slacum v. Pomery, 6 Cranch (U. S.), 221; Duncan v. Helm, 22 La. Ann. 418; Trust Co. v. Burton, 74 Wis. 329; Lamar v. Micon, 114 U. S. 218; Watts v. Camors, 115 U. S. 353; Steam Co. v. Ins. Co., 129 U. S. 397; Dulman v. Cook, 14 N. J. Eq. 56; Jones on Mortgages (1 Ed.), sec. 661; Peet v. Peet, 229 Ill. 341. (6) The rules of private international law and comity between the states from the basis for recognizing and enforcing the rights of the parties and is universally recognized by the various courts of the States and everywhere enforced. Trust Co. v. Camp, 71 Atl. (Conn.) 788; Craig v. Donovan, 63 Ind. 513; Jackson v. Green, 112 Ind. 341; Morley v. Honeman, 6 Ind. App. 240. (7) The appellants are not estopped to claim their rights under the contract by reason of accepting the proceeds of sale as same is tendered back in the reply, there is no estoppel and respondent Winkleman has notice of record and in court proceedings under which he claims title that the contract was an Iowa contract, to be performed according to the laws of that State. Bromell v. Adams, 146 Mo. 70; Eldridge v. Haefer, 93 Pac. (Ore.) 246.

*Berkheimer & Dawson* for respondents.

(1) The *lex situs* governs in all matters pertaining to real property. 1 Wharton on the Conflict of Laws, secs. 273, 274, pp. 607, 608. It is a well affirmed general rule that the laws of a sister State which either give or deny the power to contract, have no extraterritorial force or effect, where the particular contract involved relates to the conveyance or incumbrance of lands situated in another state or jurisdiction. Cochran v. Benton, 126 Ind. 58. Such conveyances or encumbrances are considered as being gov-

erned by the *situs* of the realty, and all questions re-
lating to the validity thereof are to be determined ac-
cording to that law and not according to the law of
the place of the contract or of the domicile of the con-
tracting parties. Jones on Mortgages, sec. 823; 6
Thomp. Corp., sec. 7721; Nathan v. Lee, 43 L. R. A.
824. An action to foreclose a mortgage must be
brought in the jurisdiction of the *situs* of the realty
and the action to redeem said realty from the sale of
the foreclosure must also be brought in the jurisdiction
of the *situs* realty. Allen v. Allen, 30 Pac. 213; Wheel-
er v. Walker, 64 Ala. 560; Miller v. Shotwell, 38 La.
Ann. 891. The right of redemption from legal sale
exists only by statute. Little v. People, 43 Ill. 188;
Conway v. John, 23 Pac. 170; Gosoont v. Gloe, 76 N.
W. 424. The right to redeem from such sale extends
only to cases coming within the statute. White v.
Bates, 15 S. W. 651; Owen v. Kilpatrick, 96 Ala. 421.
The law in force at the time of the sale governs. Moor
v. Seaton, 31 Ind. 1; Ross v. Ross, 129 Mass. 243. Where
a deed is executed and the parties reside in one State
and the land is situate in another, *lex situs* governs.
Minor on Conflict of Laws, p. 37; Manton v. Seiber-
ling, 107 Iowa, 534; Story on Conflict of Laws (8 Ed.),
sec. 426. The law of the *lex situs* controls as to the
questions relating to the right and title to realty. Rich-
ardson v. De Giverville, 107 Mo. 422; Story on Con-
flict of Laws (8 Ed.), sec. 428, p. 451; Brine v. Ins. Co.,
96 U. S. 635; 27 Cyc. 1801. The rights of the parties
are merged in the judgment and the same is final when
not appealed from. A final judgment means one which
can be foreclosed by execution, one that bears interest.
R. S. 1909, sec. 2090; State ex rel. v. Klein, 140 Mo.
502; State ex rel. v. Nast, 209 Mo. 708. A void sale
may be ratified by the landowner taking down and
receipting for the surplus money. Proctor v. Nance,
220 Mo. 104; Hector v. Mann, 225 Mo. 228. (2) The
validity of a mortgage of real estate, and its construc-

tion and effect are to be determined by the law of the
State where the mortgaged property is situate, al-
though the mortgage itself is executed and the par-
ties reside in another State. Dawson v. Hayden, 67
Ill. 52; Holt v. Knowlton, 86 Me. 456; Griffin v. Griffin,
18 N. J. Eq. 104; Dow v. Railroad, 20 Fed. 260; Beach
on Modern Law of Contracts, sec. 599, p. 720; State
v. Clark, 178 Mo. 319; Depas v. Mayo, 11 Mo. 319;
Baum v. Birchall, 30 Am. St. 735; Klink v. Prive, 6 Am.
St. 268; Ivey v. Lalland, 42 Miss. 444; 2 Parsons on
Contracts, 571; Richardson v. DeGiverville, 107 Mo.
422; Keith v. Keith, 97 Mo. 228; Story on Conflict of
Laws, secs. 428 and 463; Rhue v. Buck, 124 Mo. 183;
Goddard v. Sawyer, 91 Mass. 78; Fessenden v. Taft,
65 N. H. 39; Miller v. Shotwell, 38 La. Ann. 890; Kelly
v. Davis, 28 La. Ann. 773; Cochran v. Benton, 126 Ind.
158. (3) The right to redeem is purely statutory.
There is no right to redeem lands sold under execu-
tion upon judgments either of foreclosure or otherwise
in the absence of special statute. 20 Am. & Eng. Ency.
Law (1 Ed.), p. 634; Nicholas v. Tingstand, 10 N. D.
172; Smith v. Anders, 21 Ala. 782; Wimfheimer v. Ins.
Co., 56 N. J. Eq. 585.

LAMM, J.—Equity. Plaintiffs' ancestor, Aman-
da T. Hughes, sued in the Clark Circuit Court to set
aside a judicial sale following the foreclosure of a
mortgage on, say, 1300 acres of land in Clark county,
Missouri, and to redeem. Cast below, she appealed.
Pending appeal she dies, leaving plaintiffs as her only
heirs. On suggestion of her death here the cause is
revived in their names. They enter their appearance
and prosecute this appeal.

In November, 1904, Amanda T. Hughes (with two
of the present plaintiffs) executed a note to defendant
bank in the rise of $8500, due in a year and drawing
seven per cent interest, securing it by a mortgage in
common form on the land in question (then subject to

prior encumbrances) on condition that the conveyance became void if the note were paid, having also a provision for foreclosure on default. Default was made and in 1907 suit was brought by defendant bank in the Clark Circuit Court to foreclose and for judgment on the overdue note. To that suit she entered her voluntary appearance. Such proceedings were had that in June of that year a decree went foreclosing her equity of redemption, adjudging recovery on the note in the sum of $9499.08 and awarding execution. Execution issued and a sale was made in the summer of 1907. Defendant Winkleman, being the best and last bidder, the land was knocked down to him at that public vendue and outcry under the sheriff's hammer for $10,505, and he presently received a sheriff's deed. Thereafter in December, 1907, the present suit was brought.

The bill narrates the foregoing facts and then alleges that defendant bank and the plaintiff, Amanda T. Hughes, were at all times citizens and residents of Iowa; that the note and mortgage were Iowa contracts and are to be construed under its laws; that under those laws Amanda T. Hughes was entitled to redeem from a sale under a decree foreclosing a mortgage at any time within one year. Predicating a right of redemption on that state of facts, the bill next goes on to complain of irregularities in the sheriff's sale. One is said to be that the land was offered in the lump and knocked down on a lump bid for an inadequate consideration of one-half its real worth. Another is said to be that Winkleman combined with other bidders to chill and depress the bidding, whereby the price was beaten down to the injury of the mortgagor. Another is said to be that the sale was void because advertised at the "courthouse door" in Kahoka and no particular door was noticed, although there were four outside doors to the courthouse, one on each side. It was next alleged that Winkleman knew and had notice (by the

terms of the note and mortgage) of the laws of Iowa under which the contract was made and of the fact that the mortgage was not a Missouri but an Iowa contract and that the laws of that State permitted redemption in one year. Such, in substance, is the bill.

Defendant bank answered by general denial. It seems to have no interest in the subject-matter and why it was made a party is dark.

Winkleman answered admitting the execution of the note and mortgage, the judgment of foreclosure, the sheriff's sale thereunder on execution, and that he bought thereat, paid his bid and got a sheriff's deed under which he claims an absolute title. He specifically denies averments charging that the mortgage was governed by Iowa law, or that he knew it was an Iowa contract, or that the right of redemption provided by that law governed the sale of Missouri land under a Missouri judgment of foreclosure and judicial sale, or that the price was inadequate, or that there was any agreement among bidders to chill the bidding, or that the sheriff's notice of sale was irregular and void in particulars alleged. He admits the sale was a lump sale on a lump bid, but avers (and proves) it was made in that way at the request of the mortgagor and of those representing her at the sale. There is next a plea of estoppel in that there was a surplus at the sale which Mrs. Hughes took down and receipted for to the sheriff.

At the trial a faint attempt was made to show grounds of equitable relief because of inadequacy of consideration coupled with irregularities in the sheriff's sale of the sort alleged in the bill. But there was no proof of substance on any such score.

Mrs. Hughes was a citizen of Iowa, but at the time she executed the note and mortgage she was visiting in Minnesota and the mortgage shows it was executed in that State. There is nothing to show that Winkleman (we infer from the record, a citizen of Missouri).

knew she was a citizen of Iowa or knew what the laws of Iowa were, as alleged in the bill. Neither the mortgage, the note, nor the record of the foreclosure proceedings disclosed any such information. The mortgage does show that the mortgagee, the First National Bank of Boone, was a citizen of Iowa.

Iowa statutes were introduced, reading:

"Sec. 4045. The debtor may redeem real property at any time within one year from the day of sale and will, in the meantime, be entitled to the possession thereof; and for the first six months thereafter such right of redemption is exclusive; but no party who has taken an appeal from the superior or district court, or stayed execution on the judgment, shall be entitled to redeem.

"Sec. 4289. When a mortgage or deed of trust is foreclosed, the court shall render judgment for the entire amount found to be due, and must direct the mortgaged property, or so much thereof as is necessary, to be sold to satisfy the same, with interest and costs. A special execution shall issue accordingly, and the sale thereunder shall be subject to redemption as in cases of sale under general execution."

The allegation in Winkleman's answer that the sale created a surplus and that Mrs. Hughes took down that surplus was sustained by the proof.

I. *The issues on appeal.* We may with profit fetch a small compass on the issues. It will be observed that the bill is framed on two theories—one a redemption as of course under the statutes of Iowa; the other, such irregularities in the sale as made it voidable and invoked relief on general equitable principles. Attending to the latter theory, it is passed *sub silentio* and is not pressed in the brief of plaintiffs' counsel. That silence when brought to book is tantamount in a forum of reason to an admission of a failure of proof (which was so); and to an invitation to

this court to put such issue out of view (which we do.) We note in passing a novel feature, viz.: Though plaintiffs held the laboring oar to show error on appeal, yet defendants' counsel, acting on the notion, maybe, that extreme caution makes a safe proposition safer, and laboring under the glow of the old maxim: *Abundans cautela non nocet,* have elaborately briefed such abandoned points—possibly as a memorandum for use on some rainy day in some *other* case, certainly not in *this;* for, when we know it, we deal with the quick and not with the dead—with bones of contention, not with boneless contentions.

Plaintiffs stand or fall here on these propositions: (1) The mortgage was an Iowa contract. (2) Under Iowa law the right to redeem from a foreclosure sale was open for one year as of course. (3) Under the doctrine of comity that law and right must be read into the mortgage, the judgment of foreclosure, the sale and sheriff's deed; and, so reading it into and saddling it on the transaction, it must be enforced in this State. We shall say what we have to say in considering those related propositions under an omnibus head, viz.:

II. *Should the decree be disturbed?* My brethren are of one mind with me in answering that question, no. This, because:

Counsel on neither side have been able to find a case deciding the precise point presented here. Neither have we. The question being apparently new, in such fix we proceed, absent controlling authority, guided by general legal principles, the analogies of the law, parity of reasoning, and in line with public policy and common sense.

The following propositions may be accepted as announcing sound and pertinent doctrine.

(a) At common law, whatever right to redemption existed prior to foreclosure, after decree of fore-

closure and sale there was no right of redemption as of course. [Parker v. Dacres, 130 U. S. 43; White v. Smith, 174 Mo. l. c. 199 *et seq.*] In Missouri a right to redemption exists where the sale is made under a deed of trust in the nature of a mortgage by the trustee or some one representing the trustee in accordance with the terms of the instrument and without a foreclosure in court—this, under named conditions. [R. S. 1909, sec. 2829 *et seq.*] But that statute does not help plaintiffs. To the contrary, the preceding section provides for a foreclosure of the equity of redemption in court and a sale under execution, as here. Now, the right to redemption as of course is purely a creature of statute in the several states (Littler v. The People ex rel. Hargadine, 43 Ill. 188); and, to use the strong language of the Supreme Court of the United States, when a State has enacted such statute it "constitutes *a rule of property* in the State that enacts it." [Parker v. Dacres, supra, l. c. 48, and cases cited.] It follows that the right to redemption as of course under a foreclosure sale is a rule of property in the State of Iowa. It has no extra-territorial force, but dies at the State boundary, as the trees about Troy, under the mandate of the gods, grew no higher than the walls. So, the right of redemption under sales by trustees in deeds of trust is a rule of property in Missouri under certain conditions precedent. Hence, the absence of a right of redemption as of course from a sale under a decree of foreclosure in court leaves the common law in force in Missouri as to that kind of foreclosure—this, under the maxim, *Expressio unius*, etc. Now, the common law, as seen, denies such right, wherefore the rule of property in this State is to deny the right of redemption as of course under the facts of this record. That rule of property is much in evidence and is to be sharply reckoned with on the question of comity presently up for exposition.

(b)  *Of comity.*

At very root, comity is courtesy.  In jurisprudence, however, comity is a kind of courtesy which, subject to exceptions, is administered by fixed rules of law and rises to the dignity of a legal right, as over against mere politeness in social intercourse.  Courtesy must give way to the law of the forum, where the latter·on a rule of property in the State of the forum clashes with a rule of property in some other State, when the property is real property—immovables, as in the case at bar.  Speaking to the question, Story [Conf. of Laws (8 Ed.), sec. 424] says:  "And here the general principle of the common law is, that the laws of the place where such property is situate, exclusively govern in respect to the rights of the parties, the modes of transfer, and the solemnities which should accompany them.  The title therefore to real property  *can be acquired, passed, and lost*  [the italics are ours] only according to the *lex rei sitae.*  . . .  Sec. 428:  "The consent of the tribunals, acting under the common law, both in England and America, is in a practical sense absolutely uniform on the same subject. All the authorities in both countries, so far as they go, recognize the principle in its fullest import, that real estate, or immovable property, is exclusively subject to the laws of the government within whose territory it is situate.  . . .  Sec. 448:  It may be affirmed without hestitation that, independent of any contract express or·implied, no estate can be acquired by operation of law in any other manner, or to any other extent, or by any other means, than those prescribed by the *lex rei sitae.*"

The general doctrine thus announced by Judge Story is unqualifiedly subscribed to in this jurisdiction.  [State v. Clark, 178 Mo. 20; Richardson v. De-Giverville, 107 Mo. l. c. 433; Keith v. Keith, 97 Mo. l. c. 228.]  And, on reason, applies to the facts in judgment.

Mortgages and foreclosures of them come within the scope and intendment of the foregoing rules of law. [1 Jones on Mortgages (6 Ed.), sec. 661.] "The remedy," says that author, ".against the mortgagor personally may be pursued wherever the debtor may be, and therefore suit may be brought against him in a state other than that in which the mortgaged premises are; but the lien upon the land can be enforced only in the State where the land is situated. It is a well-settled principle that title to real property must be acquired agreeably to the law of the place where it is situated. This principle applies to mortgages as well as to absolute conveyances; and of course the remedy to enforce the lien must be sought where the property is. The validity of a mortgage must therefore be determined by the law of the State where the mortgaged land is, wherever the deed may have been executed or the mortgage debt made payable."

Assuming it a rule of real property in Missouri that there is no right of redemption as of course from a foreclosure on a decree, as held in paragraph "a," then, under the general principles formulated in this paragraph, how could we consistently hold that a Missouri rule of property, whereby title is lost or acquired, should give way to a contrary Iowa rule of property, when, as here, the real estate, the foreclosure, the execution, the sale, one and all are in Missouri and the sheriff's deed came into being and passed title by virtue of Missouri law? Shall we rule that an owner of land in this State acquires it under a Missouri rule of property and loses it under an Iowa rule of property? If so, wherefore? Must we look to our own laws in settling our own titles and also to the laws of forty-eight other States? That would be a hard saying, much murmured against. To so rule would be to say that a citizen of Iowa has a right of redemption under our law denied to a citizen of Missouri, merely because of the accidental factor that the mortgage in one instance

was made in Iowa and in the other in Missouri. Such a holding would, without any compensating benefit, introduce confusion and uncertainty in our land titles by unsettling our rules of property. Miserable, indeed, would be our property conditions if we left the simple and safe rules of the common law to run after a will o'the wisp of speculative refinements said by counsel to spring from comity. All our titles would be drawn within the hazard of such new doctrine, and fortunately even comity calls for no ruling having such mischief hid in its bowels.

Again, we will not so write the law as to discriminate against our own citizens, "Justice must not be sacrificed to courtesy." [Bryan v. Brisbin, 26 Mo. l. c. 425; Thurston v. Rosenfield, 42 Mo. 474.] In dealing with non-residents, they must be content with the constitutional safeguards of equality before our law—a benign and venerable doctrine, well vouched for: "Ye shall have one manner of law, as well for the stranger, as for one of your own country." [Lev. xxiv:22.]

(c) We are cited to many cases relating to transitory as distinguished from local actions, to the law of the place of the contract as distinguished from the law of the place of performance, to cases relating to movables, usury, limitations and to still others on covenants that are personal as distinguished from those that run with the land, to the right of priorities between foreign creditors on assignments, to cases dealing with the mere verbal interpretation of deeds made in one State and relating to real estate in another, in which courts have made, and properly made, nice distinctions in upholding the law of the place of the contract as between their own citizens, or as to one who seeks their courts for relief. It is not deemed necessary to discuss those cases, or to point out, as might be done, wherein they may be differentiated on principle from the case at bar. None of them, when well looked to, are in point. Moreover, in one view of it, the right

to redemption affects the remedy and, like questions relating to the admissibility of evidence, depends upon the law of the place where the case is brought and the property is situate. [Ruhe v. Buck, 124 Mo. 1. c. 183, and cases cited.]

The case breaks before reaching (hence without following out) all the ramifications in arguments and briefs. There are questions not vital that we reserve; for instance, estoppel, whether notice to Winkleman of the laws of Iowa and of the fact that the mortgage was an Iowa contract was essential to plaintiffs' right of action.

Let the decree be affirmed. It is so ordered. All concur.