CLAUDE E. REDICK, Appellant, v. M. B. THOMAS AUTO SALES, Inc., a Corporation, Respondent, No. 44384—273 S. W. (2d) 228.

Division One, December 13, 1954.

*Hullverson & Richardson* and *James W. Jeans* for appellant.

1176

*Wilbur C. Schwartz* for respondent; *Joseph Nessenfeld* of counsel.

1180

1182

 HOLLINGSWORTH, J.—Plaintiff, a motor truck operator, sought damages in the sum of $75,000 for personal injuries sustained when a tractor-trailer truck driven northward by him on U. S. Highway 66 near Pontiac, Illinois, collided with the rear end of defendant's automobile transport tractor-trailer truck also headed northward on said highway. The petition alleged and the trial court submitted to the jury the issues of defendant's negligently causing or permitting the stopping of its truck upon the highway and its negligent failure to have rear lights thereon. Defendant denied the acts of negligence charged against it and pleaded plaintiff's contributory negligence in failing to keep a lookout ahead and in failing to yield the right of way, both of which issues were also submitted.

The jury found in favor of defendant. Plaintiff appealed, assigning error in the refusal of the trial court to instruct the jury that the burden of proving contributory negligence on the part of plaintiff rested upon the defendant, in giving certain instructions in behalf of defendant, in permitting defendant's counsel to make prejudicially improper argument, and in refusing to permit plaintiff's counsel to make proper argument.

The collision out of which the action arose occurred about 1:30 a.m., on February 26, 1952, at the intersection of Highways 66 and 116 in the State of Illinois. At this point and for a considerable distance in either direction, both highways are straight and level. Highway 66 extends north and south. Highway 116, extending westward from Pontiac, intersects Highway 66 at a right angle. Highway 66, paved with concrete, is 24 feet in width; Highway 116, also paved, is 18 feet in width. The pavement was dry and the atmosphere free from fog or mist. At the time of the collision there was suspended at a height of about 15 feet directly over the center of the intersection a flasher light which flashed red for traffic proceeding on Highway 116 toward

the intersection and amber for traffic proceeding on Highway 66 toward the intersection. At the time of the collision a Hayes Truck Lines tractor-trailer was parked about 50 feet east of Highway 66 and 100 feet north of Highway 116.

Defendant's truck, consisting of a tractor and an empty orange-colored automobile transport trailer with a load capacity of four cars, left St. Louis in the early evening of February 25th and proceeded along Highway 66 toward Chicago for the purpose of there receiving a load of cars to be transported back to St. Louis. Plaintiff, operating a tractor-trailer truck for Consolidated Forwarding Company, left St. Louis at about 8:10 p.m., on the evening of February 25th, also enroute to Chicago over Highway 66, with a load of glass.

Plaintiff's evidence tended to show that when the truck operated by him came within 1000 feet of the intersection it was going about 45 miles per hour with its headlights on the high beam. As he approached, he took his foot off the accelerator, looked laterally and ahead, and slowed his speed, so that at a distance of 100 or 200 feet from the intersection he was travelling about 30 or 35 miles per hour. The light over the intersection tends to get into the eyes of persons driving north or south, they "more or less look at the light", it attracts their attention, "you couldn't see beyond that and on, and you couldn't see beneath the light." It "throw[s] a wall of light", and an operator can see better by dimming his lights. Plaintiff dimmed his lights but "still couldn't see underneath this light because it throwed a kind of shield or something like that." (On cross-examination, plaintiff said that with his lights dimmed he could see a man or a dog or an unlighted automobile 150 feet away from him.) Immediately after his tractor passed beyond the flasher light and when his trailer was directly under it, he saw the rear end of defendant's trailer about 30 feet in front of him, "stalled", "standing still"; "it seemed to be stopped"; "if it wasn't stopped, it wasn't moving two miles an hour." It had no lights burning. Its rear end was 15 feet north of the intersection. Travelling at 35 miles an hour plaintiff could have stopped his truck with safety to himself in a distance of about 70 feet. He had no time to apply his brakes. He turned a little to the left and struck the rear end of the transport trailer. The door of his cab flew open, he was thrown to the pavement and rolled upon the highway. He was not rendered unconscious and soon returned to the scene of the collision. Both trucks had rolled northeastwardly and plaintiff's outfit had "jackknifed" around the parked Hayes Lines truck, plaintiff's tractor going underneath the Hayes trailer. Plaintiff denied that he stated to anyone that he was asleep or had dozed off. He was taken to a hospital by a highway patrolman.

Alan Schroeder, a Consolidated driver who was also driving a truck northward on Highway 66 ahead of plaintiff, testified that as he

approached the intersection he noticed an auto transport coming from the east on Highway 116 and slowly and jerkily moving in a right turn northward onto Highway 66 with its headlights almost out. In his opinion its generator was dead or dying or it was having battery or fuel trouble. Schroeder blew his horn, flashed his lights, applied his brakes and swerved to his left around the auto transport truck, barely missing it. He continued on a few miles, noticed that plaintiff's truck was missing from view in his rear vision mirror, turned around, went back and found that plaintiff had been taken to the hospital. (The auto transport described by this witness was never identified as defendant's truck. In fact, the witness said on cross-examination that by no stretch of imagination could he identify it as defendant's truck. He also described it as green, whereas the evidence showed defendant's tractor to be red and its trailer to be orange-colored.)

The testimony in behalf of defendant was that its tractor and trailer lights and battery were in good condition prior to the collision. There were three lights on the rear bottom of the trailer at the center thereof, one on each corner, a stoplight on each side of the trailer that shows "Stop" when the brakes are applied, and three lights on the front thereof. The lights were burning when the collision occurred. After the collision the lights on the tractor were still burning but the collision knocked the rear and side lights off the trailer.

Defendant's operator, Glenn Jarrett, testified: His truck was not on Highway 116 prior to the collision. Prior to that time he was at all times on Highway 66. When he came within 150-200 feet of the intersection he reduced his speed to 25-30 miles per hour and began to flicker his lights between dim and bright. When the rear end of his trailer was even with or a little north of the light over the intersection, it was struck from behind, causing the outfit to leave the highway and strike the Hayes truck. Shortly thereafter, plaintiff came walking up the highway from the south and asked that someone get a doctor for him. Witness asked plaintiff what happened. Plaintiff replied: "I don't know. I must have dozed off asleep, but when I woke up there was your taillight just in front of me; and when the trucks hit I fell out on the ground, and I don't know what else happened."

Plaintiff contends that under the law of Missouri the burden of proving plaintiff's contributory negligence rested upon defendant; that such burden of proof is a procedural matter to be determined by the law of Missouri; and that the refusal of his proffered instruction so directing the jury was error. Defendant contends that the law of Illinois governs the substantive rights of the parties to this action; that under the law of Illinois a substantive and ▮▮▮ essential element of plaintiff's right to recover is the exercise of due care on his part, which must be both pleaded and proved before a submissible case

is made; and that such an instruction would have erroneously placed upon defendant the burden of disproving an essential element of plaintiff's right to recover and was properly refused.

It is agreed by the parties and indeed it could not be gainsaid that the law of Illinois governs as to the substantive rights of each and both parties. Newlin v. St. Louis & S. F. R. Co., 222 Mo. 375, 391, 121 S.W. 125, 130; Saba v. Illinois Cent. R. Co., 337 Mo. 105, 85 S.W. 2d 429, 432; Hall Motor Freight v. Montgomery, 357 Mo. 1188, 212 S.W. 2d 748, 753; Connole v. East St. Louis & S. Ry. Co., 340 Mo. 690, 102 S.W. 2d 581, 585. It is also clear that under the law of Illinois it was incumbent upon plaintiff to allege and prove that he was in the exercise of ordinary care for his own safety at the time of the accident. Hanson v. Trust Co. of Chicago, 380 Ill. 194, 43 N.E. 2d 931, 933; Prater v. Buell, 336 Ill.App. 533, 84 N.E. 2d 676, 678; Newell v. Cleveland, C., C. & St. L. Ry., 261 Ill. 505, 104 N.E. 223, 224.

At this point, it should be noted that the petition does not allege the exercise of due care on the part of plaintiff and defendant argues with much logic that it is therefore fatally defective and subject to attack for the first time in this court. The disposition we make of the case renders it unnecessary to decide that question. But it should also be noted that plaintiff's verdict-directing instructions require no finding that plaintiff was in the exercise of due care.

Is the Illinois requirement that plaintiff prove he was in the exercise of due care substantive or merely procedural? In Barker v. St. Louis County, 340 Mo. 986, 104 S.W. 2d 371, 378, we quoted with approval from Jones v. Erie R. Co., 106 Ohio St. 408, 140 N.E. 366, 368, as follows: "The distinction between substantive law and procedural law is that 'substantive law relates to rights and duties which give rise to a cause of action,' while procedural law 'is machinery for carrying on the suit.'"

We think that the Illinois requirement is substantive, just as much so as is the requirement that plaintiff plead and prove the negligence of defendant. No one would argue that the latter was not substantive. Both are essential elements of plaintiff's *right to recover* under the law of Illinois. Plaintiff suggests, however, that our courts are not obligated to involuntarily have the laws of another state engrafted into our jurisprudence, citing Hughes v. Winkleman, 243 Mo. 81, 147 S.W. 994, 997 [5, 6]; and that it will be Missouri rules of law that determine whether a given question is substance or procedure, citing Hopkins v. Kurn, 351 Mo. 41, 171 S.W. 2d 625, 626 [1]. But certainly we should not determine the matter by mere whim or fiat. "In administering the substantive laws of a sister State we administer *them*, not our own; and we should not administer them either more or less blandly than do our sister's courts." Newlin v. St. Louis & S. F. R. Co., 222 Mo. 375, 392, 121 S.W. 125, 130.

Plaintiff also urges that § 509.090 RSMo 1949, V.A.M.S., which makes contributory negligence an affirmative defense, ''is not affected by the procedural law of the locale of the occurrence.''

In the case of Fort Dodge Hotel Co. v. Bartelt (8th C.C.A.) 119 F. 2d 253, the precise questions here presented were ably discussed. In that case, a negligence action arising in Iowa, the defendant appealed from an adverse judgment, contending that the trial court erroneously instructed the jury that the burden of proving contributory negligence was upon the defendant. The law of Iowa, like the law of Illinois, places the duty upon plaintiff to plead and prove due care in negligence actions. The trial court had held that Federal Rule 8(c), from which our § 509.090 is taken, placed that burden upon defendant ▆▆▆ and so instructed the jury. The Circuit Court of Appeals disapproved the action of the trial court in these words: ''The law of Iowa requires that in a case such as this the plaintiff plead and prove his freedom from contributory negligence. In that State a complaint, in such an action, which fails to allege freedom from contributory negligence, fails to state a cause of action, [citing cases]; and if the evidence fails to prove the plaintiff's freedom from such negligence, it will not support a verdict in his favor. [Cases cited.] Freedom from contributory negligence is, therefore, under the law of Iowa an essential element of a cause of action to recover damages for personal injuries caused by negligence, * * *; and proof of that element is of the 'very substance' of the plaintiff's case. [Cases cited.] The necessity for such proof arises out of no rule of Iowa practice or procedure, but from the obligation imposed upon every. plaintiff to establish every fact essential to make out his cause of action. [Cases cited.] Regardless of what may be thought to be the implications of Rule 8(c) with respect to the burden of proof of contributory negligence as a matter of procedure, we are satisfied that the rule does not have the effect of casting upon a defendant the burden of disproving the plaintiff's freedom from contributory negligence, where under the applicable state law that is an essential element of the plaintiff's cause of action which must be proved if he is to prevail.''

The Restatement, Conflict of Laws, Sec. 595, Ch. 12, states that ''if a requirement concerning proof of freedom from fault exists in the law of the place of injury and if such condition is there. interpreted as a condition of the cause of action itself, * * * the court at the forum will apply the rule of the foreign state * * *. In such a case, the remedial and substantive portions of the foreign law are so bound together that the application of the usual procedural rule of the forum would seriously alter the effect of the operative facts under the law of the appropriate foreign state.'' The illustration following the comment is: ''A, in state X, is injured by the alleged negligence of B. A sues B in state Y. By the law of X, a plaintiff has no cause of action until he has shown that his own negligence did not contribute

to his injury. By the law of Y, contributory negligence is an affirmative defense to be pleaded and proved by the defendant. A must show his freedom from contributory negligence.''

This brings us to the case of Menard v. Goltra, 328 Mo. 368, 40 S.W. 2d 1053, upon which plaintiff relies. When that case was decided, the law of Missouri required that foreign laws relied upon must be pleaded. That is not the law of this State now. Sections 490.080-490.090 RSMo 1949, V.A.M.S.; S.Ct. Rule 3.14. The petition in the Menard case pleaded an action under the Wrongful Death Statute of Illinois and an Illinois statute adopting the common law of England as a part of the law of Illinois. ''No other law or rule prevailing in Illinois was pleaded * * *. The defendant * * * pleaded no law of Illinois.'' Menard v. Goltra, supra, l.c. 1057. The opinion then states that the Missouri statute relating to judicial notice of foreign laws makes available the decisions of another state only where the law of such other state is pleaded; states that appellant cites Illinois decisions establishing the rule that in order to recover for injuries caused by negligence it must be alleged and proved that the injured party was in the exercise of ordinary care; states: ''Appellant cites those decisions as if they construe the Wrongful Death Statute under which this suit was brought. They do nothing of the kind. They announce a general rule of negligence which prevailed from the earliest reported cases in Illinois. It was a general rule applicable to all negligence cases before the Wrongful Death Statute was enacted. Therefore we do not take judicial notice of those decisions because they do not construe the statute under which the suit was brought, and because the defendant does not plead that rule.

''Further such decisions of the Illinois courts would not be applicable here if they were pleaded. They relate merely to matters of procedure; to the remedies which are afforded a party injured, and a party defending against a suit for injuries.''

\* \* \* \*

''Therefore, for two reasons we cannot apply the rule announced in the Illinois cases quoted by appellant; because such rule of law is not pleaded, and because it applies only to the remedial rights of the parties and not to their substantive rights. The rule in this state applies, that plaintiff's negligence which contributed to his injury is an affirmative defense which must be pleaded and proved in order to be available to a defendant.'' Menard v. Goltra, supra, l.c. 1058.

We are convinced that, to the extent the Menard case holds that the Illinois rule is remedial and not substantive and to the extent it holds that Missouri courts will adhere to their rule of placing the burden of proving contributory negligence upon the defendant in a case arising in another state wherein the law of that state is as it is in Illinois, it should no longer be followed. The distinction is that the Missouri law makes a plaintiff's contributory negligence a matter of defense

only, the proof of which will defeat an existing claim. But in Illinois, the plaintiff's due care, or his freedom from contributory negligence, is not a matter of defense, defeating a claim, but an essential element which must exist before there is a cause of action in the first instance.

Other cases wherein the doctrine announced in the Menard case has been cited with approval are to the extent hereinabove indicated disapproved, such as Williams v. East St. Louis Ry. Co., Mo.App., 100 S.W. 2d 51, 55 [5-7]; Connole v. East St. Louis & S. Ry. Co., 340 Mo. 690, 102 S.W. 2d 581, 585; Meredith v. Terminal R. R. Ass'n. of St. Louis, Mo.App., 257 S.W. 2d 221, 225-226.

The trial court did not err in refusing to instruct the jury that the burden of proving plaintiff's contributory negligence rested upon defendant.

■ Plaintiff complains of Instruction 3 given in behalf of defendant. It recites in the first paragraph thereof that defendant is charged with negligently stopping its truck upon the highway and failing to have its rear lights burning. The second paragraph states that plaintiff may not recover on *this charge* except when *it* is sustained by the preponderance of the evidence. The third paragraph in dealing with the burden of proof also refers to the foregoing assignments of error as *said charge*. Plaintiff says it was reversible error to treat of his two charges of negligence as one and to direct a verdict for defendant if plaintiff had not proved *"this charge"* by a preponderance of the evidence. Technically, Instruction 3 is erroneous in referring to the two specifications of error as one charge. But, upon the whole record here presented, was the error prejudicial? By Instruction 1, given at the request of plaintiff, the jury was directed to return a verdict for plaintiff if it found that defendant negligently "caused or permitted its truck to be stopped" upon Highway 66 north of its intersection with Highway 116, and that "such negligence" was a direct cause of the collision. By Instruction 2, given at the request of plaintiff, the jury was likewise directed to return a verdict for plaintiff if it found "there were no rear lights on [defendant's] auto transport truck." Thus, it is clear that each of the verdict-directing instructions given in behalf of plaintiff specifically told the jury that if it found the one specification of negligent conduct therein hypothesized to be true, then it should return a verdict for plaintiff. We are not convinced that a mere error in the burden of proof instruction, in referring to the negligence charged in the petition as "this charge" instead of "these charges", when considered in connection with the verdict-directing instructions above outlined, could have materially affected the merits. The assignment is overruled. Sec. 512.160 (2) RSMo 1949, V.A.M.S.

■ Plaintiff contends that Instruction 5 given in behalf of defendant was erroneous in that it "failed to hypothesize ■ with sufficient particularity the essential elements of the submitted charge

* * *'', and in stating that a failure to keep a proper lookout was negligence, without hypothesizing facts showing that plaintiff was negligent as a matter of law.

Instruction 5 directs the jury "if you find and believe from the evidence that at the time and place mentioned in the evidence the plaintiff was operating the truck mentioned in the evidence northwardly over and along U. S. Highway 66 approaching the intersection of Highway 116, and that the plaintiff failed to keep a proper lookout for traffic moving northwardly on said U. S. Highway 66, * * * then * * * plaintiff was guilty of negligence, and if you further find that such negligence, if any, contributed to cause the collision * * *, your verdict must be in favor of the defendant."

Plaintiff says the jury was not instructed concerning the elements of that charge or the facts in evidence that would establish them; that the simple phrase "proper lookout" standing alone presents little or no guide. There can be no doubt that as plaintiff drove his truck northward he was required not only to look but to look in such an observant manner as to enable him to see the conditions which a person in the exercise of due care and caution for his own safety and the safety of others would have seen under like or similar circumstances. Failure to exercise such a degree of care would make him guilty of negligence as a matter of law. And, if the jury found that such negligence caused or contributed to cause the collision, which element the instruction duly hypothesized, then, as a matter of law, he could not recover. Kaley v. Huntley, 333 Mo. 771, 63 S.W. 2d 21, 23. We think the word "proper", which means "suitable" or "appropriate", would convey to any juror almost the precise legal meaning given it in the above cited case. But, if plaintiff had desired a more specific definition of the "lookout" required of plaintiff than that conveyed by the word "proper", he should have requested it. In the absence of such a request, the failure to give it is not error. Nelson v. Tayon, Mo.Sup., 265 S.W. 2d 409, 415 [4]; Sandler v. Schmidt, Mo.Sup., 263 S.W. 2d 35, 39 [2, 3]. See collected cases, 27 Mo.Dig., Trial, Key No. 256 [12].

Plaintiff also says that the instruction failed to hypothesize the circumstances which would reflect upon his ability to have seen and avoided defendant's truck, citing Yates v. Manchester, 358 Mo. 894, 217 S.W. 2d 541; Knight v. Richey, 363 Mo. 293, 250 S.W. 2d 972, 977 [9]; and Hooper v. Conrad, 364 Mo. 176, 260 S.W. 2d 496, 500 [2]. The circumstances out of which this case arose and the issues presented by the pleadings and evidence were simple. To have hypothesized in detail the evidentiary facts upon which each issue was predicated would have tended to confuse rather than clarify the ultimate issues of fact which the jury were to determine, to wit: the issues submitted by plaintiff: (1) was the defendant's truck negligently stopped, or in effect stopped, upon the highway? (2) were its lights burning? and

(3) did these acts of negligence, or either of them, if found, cause the collision?; and the issues submitted by defendant: (1) did plaintiff keep a proper lookout? (2) did he negligently fail to avoid the defendant's truck? and (3) did these acts of negligence, or either of them, if found, contribute to cause the collision?. Instruction 5 sufficiently hypothesized the finding of facts essential to determine whether plaintiff was guilty of contributory negligence in failing to keep a lookout. Hooper v. Conrad, supra, l.c. 500. The assignment is overruled.

Plaintiff levels against Instruction 6 essentially the same complaints made against Instruction 5. That instruction hypothesized a finding "that the plaintiff by the exercise of ordinary care and caution on his part saw or could have seen the automobile carrier of the defendant in time to stop or swerve his truck so as to avoid colliding therewith, and that he failed so to do, if you so find, then you are instructed that the plaintiff was guilty of negligence, ▮ and if you further find that such negligence, if any, contributed to cause the collision mentioned in the evidence and plaintiff's injury, then the plaintiff cannot recover * * *."

In Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W. 2d 914, 919-920, this court said: "If an instruction requires the jury to find facts which if true could only mean that the defendant was guilty of negligence per se or as a matter of law, then the instruction is good even if it does not require the jury to find that such facts constitute negligence, because 'the law draws the conclusion in such cases'; or in other words, the only remaining question for the jury (if it finds such facts) is proximate cause."

Plaintiff says that he had no duty to stop or swerve until there was apparent danger of a collision, and that the instruction in failing to require such a finding was error. The trouble with this contention is that plaintiff's testimony showed that, but for the overhead light, he could have seen the defendant's truck clearly for a distance of 150 feet and that he could have stopped his truck within 70 feet. Certainly, then, but for the light, plaintiff, in the exercise of due care, could have seen the danger of collision when he was far enough to the rear to have stopped or swerved. The collision here involved, while occurring at the site of an intersection, is not analogous to an intersectional collision, such as are the cases cited by plaintiff. It was negligence as a matter of law for plaintiff to drive his truck into the rear end of defendant's truck under the evidence here shown unless the light prevented him from seeing it. State ex rel. Spears v. McCullen, 357 Mo. 686, 210 S.W. 2d 68, 70 [3]. Under the evidence in this case the instruction was not erroneous.

▮ Plaintiff complains of allegedly improper argument made by defendant's counsel, as follows:

"Mr. Schwartz: * * * Did Redick (plaintiff) do what you or I or any other person would have done if this thing actually happened the way he claims it did? He would have hollered to anybody that was there, to that Trooper, and that Trooper would have been here to testify; and that burden is on him. What did he stop there for without any lights?

\* \* \* \*

"Mr. Richardson: I object to the argument of counsel about the production of the Trooper. He is just as available to him as he is to the plaintiff.

"The Court: That is a hypothetical argument. The objection is overruled.

"Mr. Richardson: I object to that, and move that the jury be instructed to disregard it. He was equally available to him.

"The Court: Objection overruled."

The court correctly ruled that the argument was dealing with a hypothetical situation. The cases cited by plaintiff to the effect that no unfavorable comment may be made as to the non-production of a witness who is equally available to both parties are not in point.

Plaintiff next contends that plaintiff's counsel was prevented from making proper argument that an inference unfavorable to defendant could be drawn from its failure to produce the author of a statement taken from plaintiff's witness Schroeder. As stated, Schroeder had testified to seeing a disabled truck with dim lights on Highway 66 near the scene of the collision shortly before it occurred. On cross-examination, he at first denied any recollection of having made a written statement. When shown the statement, he denied his signature on several of the pages. Later he said the signature on the last page looked like his. Portions of the statement were then read to him, most of which he admitted to have made. Some portions he could not remember. We are unable to find any denial of material portions of the statement if, in fact, any of it was material. (It must be remembered that the evidence never did identify the truck Schroeder saw as defendant's vehicle.) The jury was permitted to inspect the signatures appearing on the statement and to compare them with Schroeder's admittedly ▮▮▮ genuine signature, but the statement itself was never offered in evidence, which fact would tend to show that defendant's counsel did not deem it materially in conflict with the oral testimony given by the witness. In closing argument, plaintiff's counsel likewise so construed the testimony of Schroeder: "Schroeder said this truck was coming in from the side. Now, Schroeder's testimony didn't seem satisfactory. I like a fellow to be more forthright and straightforward about a lot of information. What he said in that statement was essentially the same thing he told you yesterday or today."

There is no showing of prejudice to plaintiff by refusing to permit

him to argue the failure of defendant to place the taker of the statement upon the witness stand.

Plaintiff contends that the closing argument of counsel for defendant was replete with unfair, improper and unjudicious statements.

One of these incidents arose in this manner: Defendant's counsel was arguing the meaning and effect of the instruction given the jury on the credibility of witnesses, and that defendant's witnesses were disinterested. He thereupon declaimed: "Then there is something more important than all of that: Here are six men and six ladies, taken from various walks of life. We have a mechanic, and a doctor's wife, and various housewives. My wife ever since ladies may serve has never been taken as a juror. I don't know why we can't take jurors from various walks of life. —" Counsel for plaintiff moved for a mistrial, which was denied. Counsel for defendant continued: "You are taken from various walks of life, * * *. So the court tacks this on to it: the probability or improbability of his or her testimony. In other words, it is such a thing as you have learned from your own experiences is likely to have happened. That is one of the things you judge a witness' testimony by."

Obviously, counsel was not making personal references to the individual jurors in any flattering sense or in courting their favor. He was merely calling attention to the fact that they came from several walks of life and that their collective experience would enable them to determine the truth of the conflicting testimony. The assignment is without merit.

Another instance: Defendant's counsel said in argument that the jury could take the witness Schroeder's statement to the jury room to determine if it bore his signature. Counsel for plaintiff objected. Counsel for defendant withdrew the statement. The court declared it "an improper statement". There the matter ended. The assignment is overruled.

Another instance: Plaintiff's counsel was arguing that defendant's counsel had had a photograph marked as an exhibit, but had not offered it. Defendant's counsel interjected, "You can introduce them." Plaintiff objected to the remark. The trial court sustained the objection. There the matter ended. The assignment is without merit.

Another instance: Defendant's counsel said in argument, "* * * when Mr. Richardson and Mr. Redick talked to him (witness Schroeder) Monday they told him: 'You had better have that truck crowding you a little bit.' " Counsel for plaintiff objected. The court sustained the objection and directed the jury to disregard it. Counsel for defendant then said, "I say it is an inference that I can draw, that is all." There the matter ended. The statement was improper, but the prompt sustention of the objection apparently satisfied counsel for plaintiff. We are not convinced that the jury was prejudiced by it.

Another instance: Defendant's counsel stated in argument that Missouri highway engineers "copied from the Illinois highways" in the installation of overhead highway lights such as was involved in this case. Plaintiff objected upon the ground there was no. evidence to that effect. The objection was sustained. There the matter ended. The assignment is overruled.

Another instance: In concluding his argument, counsel for defendant invoked the jury to apply the Golden Rule. No objection was made. We would be reluctant to hold it a bad rule, even in a lawsuit. But in any event, we do not deem it to have been prejudicial; and, apparently, at the time the argument was made, plaintiff was not averse to its application.

The judgment is affirmed. All concur.