Oliver L. **DIXON**, Plaintiff-Respondent,

v.

**CAMPBELL SIXTY-SIX EXPRESS, INC.,**
a Corporation, Defendant-Appellant.

No. 46811.

Supreme Court of Missouri, Division No. 1.

Feb. 9, 1959.

Rehearing Denied March 9, 1959.

Hale W. Brown, Kirkwood, for plaintiff-respondent.

F. X. Cleary, C. M. Kirkham, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for defendant-appellant.

HYDE, Presiding Judge.

Action for damages for personal injuries. Plaintiff had judgment for $15,000 and defendant has appealed.

Defendant contends the court erred in overruling its motion for a directed verdict at the close of all the evidence, on the ground that "in failing to see defendant's vehicle until he was only 25 feet from it, when by his own testimony he could have seen it 200 to 250 feet away, in time to have stopped his truck or to have changed lanes, plaintiff was contributorily negligent as a matter of law and was not in the exercise of ordinary care for his own safety." Since the collision in which plaintiff was injured occurred in Illinois, the law of that state applies so that plaintiff's due care and his freedom from contributory negligence was an essential element of plaintiff's case which must exist before there is a cause of action in the first instance. Redick v. M. B. Thomas Auto Sales, 364 Mo. 1174, 273 S.W.2d 228, 235; O'Leary v. Illinois Terminal Railroad Co., Mo.Sup., 299 S.W.2d 873; Gerhard v. Terminal Railroad Ass'n of St. Louis, Mo.Sup., 299 S.W.2d 866. Therefore, we must determine whether there was substantial evidence from which the jury could reasonably have found that plaintiff was in the exercise of ordinary care at the time his truck approached and struck the defendant's truck.

Plaintiff was a driver for the Consolidated Forwarding Company and on

June 1, 1955, was driving one of their tractor-trailer transport trucks from Chicago to St. Louis. The collision occurred between 4:00 and 4:30 a. m. on that day. Plaintiff had left Chicago that night (May 31st) with 14 tons of cargo. He had good lights and good air brakes which were working well. His eyes were perfect before the collision. He had made a half-hour stop 100 miles out of Chicago and had driven about 85 miles farther before the collision occurred. Plaintiff was driving on a four-lane highway, with two lanes for northbound traffic and two lanes for southbound traffic with a divider separating the northbound and southbound lanes. The southbound lanes on which plaintiff was driving were of concrete pavement 22 feet wide, each lane being 11 feet wide with a black line separating them; his truck was about eight feet wide. Plaintiff said he was thoroughly familiar with this road. The road was straight, almost level, from a point a quarter to a half mile north of the place of collision, but a little downgrade to the place of collision. There was nothing to interfere with plaintiff's view for at least that distance. It was a clear night with no fog or rain. There was nothing around the scene of the accident except cornfields and it was completely dark from there to Elkhart, the nearest town. As plaintiff approached the point of impact, plaintiff was driving his truck with his lights on high beam at a speed of 40 to 45 miles per hour in the right-hand or shoulder lane for southbound traffic. He said he saw defendant's truck (also a tractor-trailer unit) for the first time when he was 25 feet from it. He tried to miss it by swerving to the left but, in that short distance, could not do so. He swerved about a foot, enough to clear his left front fender and headlight. The rest of the front of his truck went under the rear of the other truck. Plaintiff thought he was still going 40 to 45 miles per hour at the impact. Plaintiff testified concerning this occurrence on direct examination, as follows:

"Q. When was the first time you saw the vehicle with which you became involved in a collision? A. I saw it approximately twenty-five feet before I got to it.

"Q. Twenty-five feet before you got to it? A. Yes, sir.

"Q. Mr. Dixon, tell the jury what the first thing you saw was? A. The first thing I saw, it just looked like a big shadow, which loomed right up in front of me, and it turned out to be a truck.

"Q. Was traffic very thick, or was it sparse, this time of the morning? A. It was scarce.

"Q. At four-thirty in the morning. Your truck struck the rear of the other truck; is that right? A. Yes, sir.

"Q. Was this truck moving? A. No, sir.

"Q. What would you say this truck was doing at the time impact occurred? A. I would say if he was moving, he couldn't have been going over two miles an hour.

"Q. And you slammed right into him? A. I tried to miss him. I got as far as I could to the left, but in that short distance, I couldn't miss him."

Plaintiff estimated that the two trucks traveled about 150 yards after the collision. (Apparently this included the movement made to separate them.) He said there were no lights burning on defendant's truck. On cross-examination, plaintiff said that with his lights on high beam, out in the country, he could see an object with reflectors 200 to 250 feet and other objects approximately 200 feet. Plaintiff estimated that at 45 miles per hour he could have stopped his truck, under the conditions existing at the time, in approximately 200 feet and at 40 miles per hour, in 190 feet.

As to changing lanes, he said it would take three to four seconds to change lanes and that "if you made a sudden change, I mean just cut it over as hard as you could, I would say you could do it in 125 feet, but it would be safer in 150 to 200 feet." Another driver of Consolidated was following plaintiff but did not see the collision. He arrived in time to help get plaintiff out of the truck, and he said all of defendant's trailer lights were out after the collision but he saw a blinking light on the left front fender of defendant's tractor. He said defendant's truck was pretty close to the color of the volume 91 S.W.2d (shown to him at the trial) but a little darker. Reeves said he asked defendant's driver "if he was moving or sitting" and he said: "Yes, I was moving all right." Reeves estimated from glass and oil on the pavement that after the collision plaintiff's truck moved 20 to 30 feet from the point of the impact; and he said that thereafter defendant's truck was driven about 100 yards from plaintiff's truck, which got on fire after the collision.

Defendant's evidence was that its truck was lighted and being operated at a speed of 33 to 35 miles per hour at the time it was overtaken and struck by plaintiff's truck (testimony of its driver and the recording of a tachograph on defendant's truck); and that its driver had stopped about a mile north of the place of the collision, pulling off on to a gravel road and inspecting his tires and lights. There was also testimony and a photograph (taken before defendant's truck was towed away) to show that there were reflectors on the rear of defendant's truck, but defendant's driver said: "They don't keep them (the back of the trucks) well cleaned up."

▮ Our conclusion from plaintiff's evidence, considering any evidence of defendant favorable to plaintiff, is that it is not sufficient to reasonably support a finding of plaintiff's exercise of ordinary care on this occasion. Plaintiff's own testimony was that his lights were good and working perfectly; and that on high beam, as they were, he could see an object approximately 200 feet. There were no other approaching vehicles or roadside lights to distract plaintiff's attention and he was driving on a wide concrete pavement, having two eleven-foot lanes for southbound traffic only, with cornfields on each side, on a road with which he was thoroughly familiar. No reason appears from the evidence to show why under these conditions plaintiff should not have seen such a large object as this tractor and trailer sooner than at a distance of 25 feet if plaintiff had been using ordinary care to keep a lookout. Plaintiff argues that the back of the trailer was dirty so as to diminish the effect of its reflectors and that might be a reasonable inference from the statement made by defendant's driver concerning the cleaning of its trucks by defendant. However, under plaintiff's testimony, while that might affect his ability to see these reflectors at 250 feet or more, he could have seen this large vehicle at approximately 200 feet and he said he could have changed lanes in 125 feet by prompt action and with no difficulty in 150 feet. He also gave his stopping distance at 45 miles per hour as 200 feet, and he would have had more than that distance if defendant's truck was moving as he admitted it might have been. To be considered also is the fact that plaintiff's witness Reeves saw at least one light on the front of defendant's tractor and the effect of the collision on the operation of the trailer lights. In any event, traveling at about the maximum permitted speed of 45 miles per hour, plaintiff had a duty to use ordinary care to keep a lookout for vehicles ahead and his testimony concerning his lights shows that with such care he should have seen defendant's tractor-trailer sooner than at 25 feet and in time to have avoided striking it.

In Redick v. M. B. Thomas Auto Sales, supra, 273 S.W.2d loc. cit. 237, a case of a rear-end collision in Illinois (in which the plaintiff's testimony also was that the truck ahead was without lights, stopped or moving slowly) we said: "Plaintiff's testimony

showed that, but for the overhead light, he could have seen the defendant's truck clearly for a distance of 150 feet and that he could have stopped his truck within 70 feet. Certainly, then, but for the light, plaintiff, in the exercise of due care, could have seen the danger of collision when he was far enough to the rear to have stopped or swerved. The collision here involved, while occurring at the site of an intersection, is not analogous to an intersectional collision, such as are the cases cited by plaintiff. It was negligence as a matter of law for plaintiff to drive his truck into the rear end of defendant's truck under the evidence here shown unless the light prevented him from seeing it." A similar ruling is made in Sumner v. Griswold, 338 Ill.App. 190, 86 N.E.2d 844, 846, as follows: "Plaintiffs have not established that they were in the exercise of due care for their own safety. Neither plaintiffs nor their passengers saw defendant's wagon until the moment of the collision, despite the fact that the road was level for 1000 feet, and plaintiff, Harold Sumner, admitted that from the beam of his own lights he could see at least 150 to 200 feet ahead." See also Hogrefe v. Johnson, 271 Ill.App. 469; Harper v. Thompson, 318 Ill.App. 226, 47 N.E.2d 501; Kornenberger v. Coca-Cola Bottling Co. of Chicago, 324 Ill.App. 519, 58 N.E.2d 334; State ex rel. Kansas City Southern R. Co. v. Shain, 340 Mo. 1195, 105 S.W.2d 915. We think the rulings made in the Redick and Sumner cases are applicable here.

Plaintiff argues that the evidence does not show defendant's truck to have been "clearly visible" and relies most heavily on Moore v. Bethel, 4 Ill.App.2d 270, 124 N.E.2d 352, 354, in which the plaintiff, driving his automobile down a blacktop highway at night, struck the rear of defendant's truck which had stopped on the highway because of a collision of two other vehicles ahead of it. The truck driver had stopped and, after going to the place of the collision, was preparing to put out flares but did not have them out when his truck was struck by the plaintiff's automobile; the defendant's truck was a flat-bed truck with sideboards and a tail gate. In that case, the court said: "In the instant case, of course, plaintiff was not confronted with an unlighted object; but we are not prepared to say that the 'clearly visible' rule automatically comes into operation when the standing object is admittedly lighted. The many variables present in cases of this sort, such as the kind of truck or vehicle stopped, number of lights on such vehicle, condition of the road and weather, type of warning signals, if any, and the presence or absence of diverting circumstances, and the nature of such diversion, if any, militate against the drawing of inflexible rules of negligence or contributory negligence. The law wisely provides, therefore, that except where all reasonable minds would be forced to the same conclusion, the weighing of all the evidence pertaining to these factors and the fixing of liability, if any, is best left to the jury, subject to review on the point of the weight of such evidence. We are satisfied that this is such a case. Here the evidence disclosed that the accident happened several hundred feet beyond the crest of a hill on a blacktop highway; that defendant's truck had been in daily use hauling coal and gravel and that the tail light and clearance lights were below the tail gate of the truck; and that the Ford auto was at an angle across the west lane of the highway with its lights burning. These facts added to plaintiff's testimony as to his speed and attention to the highway conditions which must be taken as true, afford a basis for the jury's finding on the issue of contributory negligence." Thus in that case there were the diverting lights of the Ford (in an unusual position) which had been involved in a previous collision and because of which the defendant had stopped; and this created a situation in which the jury could have found that defendant's flat-bed truck was not clearly visible. Plaintiff also cites Collins v. Neal, 7 Cir., 219 F.2d 238, in which the defendant's car struck plaintiff's farm tractor on an Illinois highway at night, but the

court held the plaintiff made a jury case without discussing the issue of the plaintiff's negligence. However, plaintiff herein has not shown any diverting or distracting conditions, and his testimony indicates no excuse for failure to see such a large object as defendant's truck-trailer, with the lights he had, by the use of ordinary care in keeping a lookout. From all the circumstances, it appears that it must have been clearly visible to plaintiff, if he had been exercising such care, at least in time to have avoided it by changing lanes.

The judgment is reversed.

All concur.